IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 4 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JOSE ALFREDO RIVERA, §<br>Petitioner, §<br>§<br>v. §<br>§<br>DOUG DRETKE, Director, §<br>Texas Department of Criminal Justice, §<br>Correctional Institutions Division,[1] §<br>Respondent § | CIVIL ACTION NO. B-03-139<br>**CAPITAL LITIGANT** |

## RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND, ALTERNATIVELY, MOTION TO DISMISS AS TIME-BARRED PURSUANT TO 28 U.S.C. § 2244(d) WITH BRIEF IN SUPPORT

Petitioner Jose Alfredo Rivera ("Rivera") was properly convicted and sentenced to die for the brutal murder of three-year-old Daniel Luis Blanco which occurred while Rivera was in the course of committing or attempting to commit an aggravated sexual assault. He previously and unsuccessfully contested his presumptively valid conviction and sentence in the state and federal courts, and the 197th District Court of Cameron County, Texas set Rivera's execution for Wednesday August 6, 2003. On the evening of August 6th, the Fifth Circuit Court of Appeals stayed Rivera's impending execution, and granted leave for Rivera to file a successive habeas petition pursuant to 28 U.S.C. § 2244(b) on the issue of mental retardation. *In re: Jose Alfredo Rivera*, No. 03-41069 (5th Cir. 2003) ("*Rivera II*").[2] On

---

[1]     The "Institutional Division" of the Texas Department of Criminal Justice was recently renamed the "Correctional Institutions Division." Additionally, the previous named respondent in this action was Janie Cockrell. On August 18, 2003, Doug Dretke succeeded Cockrell as Director of the Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, he "is automatically substituted as a party." FED. R. CIV. P. 25(d)(1). As used herein, respondent shall be referred to as "the Director."

[2]     A copy of this opinion is attached to Rivera's successive writ as Exhibit #16.

August 11, 2003, Rivera filed his successive writ petition in this Court, arguing that his death sentence is barred by *Atkins v. Virginia,* 536 U.S. 304 (2002), because he is mentally retarded. However, for the reasons explained below, this Court is without jurisdiction to consider Rivera's claim; alternatively, even if jurisdiction exists, Rivera's petition must be dismissed as time-barred under 28 U.S.C. § 2244(d).

## I.    The Court Should Dismiss Rivera's Successive Writ For Lack Of Jurisdiction.

In its opinion staying Rivera's execution and authorizing leave for a successive federal petition, the Fifth Circuit found that Rivera satisfied the preliminary *prima facie* threshold requirement to bring his claim in this Court under 28 U.S.C. § 2244(b)(3)(C). *Rivera II,* at *2 (citing standards set out in earlier opinion, *In re: Jose Alfredo Rivera,* No. 03-41065, *4-5 (5th Cir. 2003) ("*Rivera I*")); *see* Director's Exhibit "A" (copy of *Rivera I* opinion). As the court explained, a *prima facie* showing within the meaning of § 2244(b)(3)(C) is "'simply a sufficient showing of possible merit to warrant fuller exploration by the district court.... If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition, we shall grant the application.'" *Rivera I,* at *4 (citing *In re Morris,* 328 F.3d 739, 740 (5th Cir. 2003) (quoting *Bennett v. United States,* 119 F.3d 468, 469-70 (7th Cir. 1997)), and *Reyes-Requena v. United States,* 243 F.3d 893, 898-99 (5th Cir. 2001)).

Rivera's case now must pass through a _second_ threshold requirement in this Court before his claim can be heard on the merits. *See* 28 U.S.C. § 2244(b)(4); *see also Reyes-Requena,* 243 F.3d at 899 ("petitioner must make more than another *prima facie* showing before the district court"). Pursuant to 28 U.S.C. § 2244(b)(4), "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of

this section." To satisfy such requirements, § 2244(b)(2)(A) instructs that "[a] claim presented in a second or successive habeas corpus application ... shall be dismissed unless the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).

As discussed below, however, Rivera's case does not meet the requisite threshold criteria to merit further review because, first, based on binding precedent clarifying minimal successive filing requirements, Rivera's allegation is insufficient under the law to merit successive review and, second, under *Tyler v. Cain*, 533 U.S. 656 (2001), the Supreme Court has not made *Atkins* retroactive as a matter of law. In either event, this Court is without jurisdiction and Rivera's successive filing must be dismissed.

### A. Rivera's allegation is insufficient to merit successive review.

A second threshold review indicates that Rivera has not demonstrated sufficient evidence to show that he could be classified as mentally retarded. As stated in *Atkins*:

> The American Association of Mental Retardation (AAMR) defines mental retardation as follows: "*Mental retardation* refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18."

> The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years

3

(Criterion C).

*Atkins*, 536 U.S. at 309 n.3 (internal citations omitted); *cf.* TEX. HEALTH & SAFETY CODE §
591.003(13) (Vernon 2003) (setting forth the substantially similar definition under Texas
law); *see also Ex parte Tennard*, 960 S.W.2d 57, 60 (Tex. Crim. App. 1997) (§ 591.003(13)
adopts the AAMR three-part definition of mental retardation).

Both the Fifth Circuit panel and the Texas Court of Criminal Appeals relied on the
*Atkins* standards in deciding whether Rivera met his initial threshold showing of retardation.
*Rivera I*, at *5 (Director's Exhibit "A" at 5) (citing *Atkins*, 536 U.S. at 308 n.3); *Ex parte
Rivera*, No. 27,065-02, 2003 WL 21752841, at *2 (Tex. Crim. App. July 25, 2003) (per
curiam unpublished order) ("To fulfill the *prima facie* requirement for an *Atkins* claim, an
applicant should provide evidence of at least one I.Q. test (preferably taken before the age
of 18) from which a reasonable trier of fact could conclude that the person is mentally
retarded under *Atkins*,[3] coupled with supporting school and medical records and record
evidence or affidavits from qualified experts (or laymen with sufficient personal knowledge
of specific conduct) that raise an issue about applicant's lack of adaptive skills and the onset
of mental retardation before age 18."); *see* Director's Exhibit "B" (copy of opinion). Since
Texas has expressly relied on the standards announced in *Atkins* for determining who
qualifies as mentally retarded, this Court should likewise apply the *Atkins* standards in
addressing whether Rivera has met the second threshold for review.

Rivera did not claim to be mentally retarded until June 20, 2003, when he filed a
successive habeas application in state court just six weeks before his scheduled August 6,

---

[3]　Of course, if the applicant or his attorney, after a diligent search, are unaware of the
existence of any prior I.Q. testing, then other materials supporting a conclusion of 'significant
subaverage intellectual functioning" may suffice for a *prima facie* showing.

2003 execution. Rivera's evidence was insufficient to merit successive review in state court because he failed to meet the threshold factual burden of making a *prima facie* case of mental retardation. *Ex parte Rivera*, 2003 WL 21752841, at *2 (explaining successive *prima facie* requirements in *Atkins* context, and holding that Rivera failed to make this showing);  *see* Director's Exhibit "B." By the time his case reached the Fifth Circuit on August 5th -- the day before his execution -- the circuit court and the Director had limited time to research, review, and respond to Rivera's claim.[4]  Although Rivera was able to make a *prima facie* showing in the Fifth Circuit, the same does not hold true for the review to be conducted by this Court.

The Fifth Circuit has acknowledged and recognized this Court's role in requiring Rivera to meet *Reyes-Requena's* more stringent second threshold that requires a petitioner to make "more than another *prima facie* showing" to establish jurisdiction and charged this Court as follows:

> This grant is, however, "'tentative in the following sense: the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion.' The district court then is the second 'gate' through which the petitioner must pass before the merits of his or her motion are heard." *Reyes-Requena*, 243 F.3d at 899 (quoting *Bennett*, 119 F.3d at 470); *see also* 28 U.S.C. § 2244(b)(4).  The district court "must conduct a 'thorough' review to determine if the motion 'conclusively' demonstrates that it does not meet AEDPA's second or successive motion requirements." *Reyes-Requena*, 243 F.3d at 899 (citing *United States v. Villa-Gonzalez*, 208 F.3d 160, 1165 (9th Cir. 2000)).

*In re Morris*, 328 F.3d at 740.  In accordance, the *Rivera I* panel emphasized that "the grant

---

[4]    In contrast, Rivera has had multiple opportunities to have been tested for mental retardation both in and out of the legal system since he was a youth.  Additionally, *Atkins* was decided over a year before Rivera's scheduled execution.

of authority to file a claim of retardation is tentative in the sense that the district court *must dismiss the motion without reaching its merit* if Rivera fails to meet the requirements for filing." *Rivera I*, at *4 (citing *Morris*) (emphasis added); *see* Director's Exhibit "A" at 4. Thus, while the circuit court's ruling is understandable in the heat of last-minute litigation, this Court is able to make a more thorough assessment of the likelihood of success on the merits, before determining whether to proceed with more in-depth review. Indeed, that is the rationale behind the second threshold. *See Bennett v. United States*, 119 F.3d at 469-70 (discussing tight deadlines and limited information available on initial circuit court review).

As shown below, under the evidence presented, Rivera does not meet any definition of mental retardation. In his motion for authorization to file a successive habeas petition, which the Fifth Circuit relied upon in passing Rivera through to the second threshold, Rivera presented supporting documents in part from the following sources: a report from Dr. Richard Garnett (an unlicensed psychologist), lay affidavits from teachers and family members, school records, and medical records relating to Rivera's treatment for inhalant abuse. None of the information presented classified Rivera as actually being mentally retarded -- in fact, some of his evidence expressly contradicted that conclusion -- and none of the information contained reliable evidence of limits in adaptive functioning beyond poor school performance and maladaptive juvenile behavior.[5]

For example, Rivera provides an unsworn "consultation report" dated July 31, 2003, six days after the Texas court dismissed Rivera's successive writ,[6] from Dr. Richard E.

---

[5]    This evidence is also provided to this Court as exhibits accompanying Rivera's successive writ petition.

[6]    Importantly, there is no explanation for why Rivera did not attempt to obtain this document earlier and present it to the Texas Court of Criminal Appeals in his skeletal writ or in any of his five supplements. Instead, Rivera raised the evidence for the first time in his motion for the

Garnett opining that "The materials that I have reviewed suggest that Mr. Rivera is mentally retarded and there is no information which could rule out that diagnosis." Rivera's Successive Writ Exhibit #1 at 6. Importantly, Garnett admits that he based his opinion solely on materials provided by Rivera, and that he did not personally interview, meet, or test Rivera. *Id.* at 1, 2. For the reasons explained below, Garnett's report is of no value in determining whether Rivera is, in fact, mentally retarded.

Garnett's affidavit does not state that he is licensed in the State of Texas, *see id.*, and the Texas State Board of Examiners of Psychologists lists no one with the last name "Garnett" as a licensed psychologist in Texas in its roster current through May 2003. *See* tsbep.state.tx.us/2003_roster. Section 591.003(16) of the Texas Health and Safety Code defines "Person with mental retardation" as "a person determined by a physician or psychologist licensed in this state or certified by the department to have subaverage general intellectual functioning with deficits in adaptive behavior." TEX. HEALTH & SAFETY CODE §591.003(16). Therefore, unless Garnett is a physician or psychologist licensed in Texas, his opinion of whether Rivera is mentally retarded should be of no consequence in this proceeding.

Furthermore, assuming Garnett is a psychologist licensed in Texas -- which he is not -- the Rules of Practice promulgated by the Texas State Board of Examiners of Psychologists require his written opinion about Rivera's psychological characteristics to contain clarification of the extent to which his failure to examine Rivera limits the reliability and validity of his opinions, conclusions, and recommendations. *See* 22 TEX. ADMIN. CODE § 465.18(b)(4). Garnett's opinion regarding Rivera is admittedly based only on his review of

---

Texas court to reconsider the denial of his successive state habeas application.

documents provided by Rivera's habeas counsel rather than a personal evaluation of Rivera, but Garnett fails to disclose the extent to which he failure to personally examine Rivera limits the reliability and validity of his opinions, conclusions, and recommendations. *See generally* Rivera's Successive Writ Exhibit #1. Because any diagnosis Garnett could render is invalid under state law, his conclusions should be disregarded.

Additionally, although Garnett complained that he had not been provided with "any valid psychometric measure of [Rivera's] intellectual functioning and have been informed that no such test has been located," *see* Rivera's Successive Writ Exhibit #1 at 3, he acknowledged that testing from Rivera's prior incarcerations reflect I.Q. scores of 92 and 80 -- well above the I.Q. prong cut-off of 70 to qualify as being mentally retarded -- although he tries to discredit the validity of the scores. *Id.* at 3-4; *see Atkins*, 536 U.S. at 309 n.5 (noting that 70 is "typically considered the cutoff I.Q. score for the intellectual functioning prong of the mental retardation definition"); *Ex parte Tennard*, 960 S.W.2d at 60 ("To be classified mentally retarded, a person generally must have an I.Q. of 70 or below."). Interestingly, Rivera provided no I.Q. scores to the Court of Criminal Appeals in his successive writ or in any of his five supplements. However, when the court issued its opinion dismissing the writ, it specifically noted that the Court's own search through the trial record revealed an I.Q. score of 92 and a defense expert at trial who testified that his evaluation of Rivera in anticipation of trial was consistent with an I.Q. score of 92. *Ex parte Rivera*, 2003 WL 21752841, at *2; *see* Director's Exhibit "B" at 2. Only at that point did Rivera acknowledge that the I.Q. score even existed, and then he attempted to discredit it in part through Garnett's report when he moved the Texas court to reconsider the denial of his state writ.

Equally unconvincing are the affidavits from Rivera's lay witnesses. For example,

8

Rivera's homeroom teacher testified that Rivera was a "very poor student" and "not able to learn much," but he admits that by sixth grade, Rivera a reached a point where he just did not seem to care and that he did not have much motivation. Rivera's Successive Writ Exhibit #5 at 1 (¶ 3). Many of his conclusions about Rivera's alleged intellectual shortcomings are speculative as best -- "I suspect that [Rivera] could not add or subtract very well, and he probably did not know how to multiply," *id.* (¶ 5); "I suspect that when [Rivera] was in 6th grade, his math skills were at a 2nd grade level," *id.* at 1-2 (¶ 6); and "I suspect" that Rivera could not read the books in his prescriptive reading class, *id.* at 2 (¶ 7). Another teacher, Roberto Moreno, admits that he never even taught Rivera. *See* Rivera's Successive Writ Exhibit #7 at 1 (¶ 2).

Affidavits from Rivera's family members do not support Rivera's *Atkins* claim. *See, e.g.*, Rivera's Successive Writ Exhibits #8 (Maria Juanita Rivera, sister), #9 (Esmeralda Maciel, sister), #10 (Camelia Garcia, sister), #11 (Lupita Rodriguez, sister), #12 (Dora Garza, ex-wife), #13 (Alfredo Rivera, father). No family member testified that Rivera is actually retarded or that he was ever labeled "mentally retarded" while in school. *See id.* Instead, family members provide testimony establishing the opposite. For example, Rivera's sister Maria Juanita Rivera states that Rivera writes her from prison about once a month, but that his letters are not written well, and contain "misspelled words, incomplete sentences, pronunciations [*sic*] marks all over the place or in the wrong place." Rivera's Successive Writ Exhibit #8 at 1 (¶ 5). She also testified that Rivera knew how to drive and would drive his wife's car around, but that he never took a driving test. *Id* at 2 (¶ 7). Importantly, she also casts doubt on whether Rivera's alleged intellectual deficiency is a result of mental retardation or the product of his own inhalant abuse, because Rivera "used to sniff paint" and did that for as long as this witness could remember. *Id.* at 2 (¶ 8). An older sister, Esmeralda

9

Maciel, testifies that Rivera was placed in special education classes, not because he is retarded, but because "he could not read very well." Rivera's Successive Writ Exhibit #9 at 1 (¶ 3). In contrast to the sister who gets monthly letters from Rivera, Maciel contends that Rivera "doesn't write very much," and that "is typical of our whole family; we just don't like to write." *Id.* (¶ 5). A third sister, Camelia Garcia, testifies that Rivera did not work very much, that her father would find jobs for Rivera, and that she does not remember Rivera ever finding a job on his own. Rivera's Successive Writ Exhibit #10 at 1 (¶¶ 2, 3). In contrast to testimony from Maria Juanita Rivera that Rivera would drive his wife's car, Garcia testifies that Rivera "did not drive" and that "his wife was the one who drove him everywhere." *Id.* at 2 (¶ 9). Lupita Rodriguez, another sister, also testified that Rivera "does not know how to drive," that Rivera would write her letters from prison, and that Rivera "used to sniff paint when he was young," that he did it "from when he was little all the way to high school," and he "always did it." Rivera's Successive Writ Exhibit #11 at 1 (¶¶ 5, 4, 6). Dora Garza, Rivera's ex-wife, testified that she was married to Rivera for approximately twelve years. Rivera's Successive Writ Exhibit #12 at 1 (¶ 1). She also relates that Rivera knows how to read in English and Spanish, but that she hardly ever saw him pick up a book and read. *Id.* (¶ 6). In sharp contrast to comments made by Rivera's sisters and ex-wife that Rivera did not work much, that he never filled out job applications, that the longest he ever held a job was a few months, and that he never worked around the house, Rivera's father Alfredo Rivera testified that he worked many jobs with his son; that Rivera worked at a Ramada Inn for six or seven months as a cook's helper; that Rivera left the Ramada Inn job when the pay was cut and not because he could not do the job; that Rivera did not fill out job applications because he would hear about a job opportunity from his father or from a friend, and then go apply in person; and that Rivera worked around the house doing various things like cutting

10

the yard or helping paint the house. *See* Rivera's Successive Writ Exhibit #13 at 1(¶¶ 2-4).

School records provided by Rivera do not establish that he is retarded. *See* Rivera's Successive Writ Exhibit #6. Instead, the records reflect that he earned C's in all classes and terms except one D in one term. He repeated first grade (and later fifth grade) and was placed in special classes, where he earned C's, B's, and one D. By the time he finished sixth grade, his grades had fallen mostly to mostly D's and F's in his academic subjects, including Spanish, his home language and in which he had previously earned A's. He continued to earn C's or less in academic subjects but, significantly, earned A's and B's in mechanical repairs. Finally, Rivera withdrew from school while in the ninth grade. Moreover, the fact that Rivera was placed in special education classes, standing alone, does not evidence that he is retarded. While it is true that a mentally retarded individual will probably be placed in special education classes, the inverse is not true -- not everyone in special education is retarded. Moreover, Rivera's own evidence suggests he was inhaling paint at an early age and any attention problems, cognitive deficiencies, or lack of interest or motivation could easily be attributable to his own destructive behavior, not to mental retardation. *Compare, e.g.,* Rivera's Successive Writ Exhibit #14 (medical records state that Rivera has been inhaling paint since age 17) *with* Rivera's Successive Writ Exhibit # 15 (T.D.C.J. records show Rivera inhaling paint since age 14); Rivera's Successive Writ Exhibit # 8 (affidavit of Maria Juanita Rivera, that Rivera sniffed paint for as long as she can remember); Rivera's Successive Writ Exhibit # 11 (affidavit of Lupita Rodriguez, that Rivera sniffed paint "from when he was little all the way to high school" and that "[h]e always did that.").

Further, medical records from the Tropical Texas Center for Mental Health and Mental Retardation do not support that Rivera is mentally retarded. *See* Rivera's Successive Writ Exhibit #14. Instead, the record reflect that Rivera went to the center for treatment of

11

inhalant abuse (spray paint) and comes "on the request of his probation officer." *Id.* at 1. Although the records state that Rivera "started inhaling paint when he was about 17 years old" and that he only uses it "about twice a week," *id.*, such evidence contradicts the T.D.C.J. records and testimony of Rivera's sisters who describe Rivera as having abused inhalants for a longer period of time. *Compare id. with* Rivera's Successive Writ Exhibits #14, #8, & #11. Most damning, the records state "There is *no history* of inheritable conditions or presence of mental illness, *mental retardation* or alcoholism in the family." Rivera's Successive Writ Exhibit #14 at 3 (emphasis added). Instead of helping prove his claim, Rivera's own evidence helps establish that he is not mentally retarded.

The quantity and quality of the evidence presented by Rivera fails to show that he is, in fact, mentally retarded. Consequently, Rivera has not conclusively demonstrated that he meets AEDPA's successive filing requirements. 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim ... unless the applicant *shows* that the claim *satisfies* the requirements of this section.") (emphasis added). At most, Rivera has shown that he *might* satisfy the successive filing requirements. As a matter of law, this is insufficient to pass through the second gatekeeping threshold and his successive petition must be dismissed for lack of jurisdiction.

**B.    The Supreme Court has not made *Atkins* retroactive.**

Additionally, Rivera has made no attempt to actually "show" this Court that his claim has been made retroactive by the Supreme Court, as dictated in *Tyler v. Cain*:

> [A] court of appeals may authorize such a filing only if it determines that the applicant makes a "*prima facie* showing" that the application satisfies the statutory standard. [28 U.S.C.] § 2244(b)(3)(C). *But to survive dismissal in district court, the applicant must actually 'sho[w]' that the claim satisfies the standard.*"

533 U.S. at 661 n.3 (emphasis added). Fundamentally, despite the Fifth Circuit's assumption that *Atkins* is retroactive, the Supreme Court has not expressly held that it is and this Court is not bound by any Fifth Circuit opinion on the matter. *See id.*, 533 U.S. at 663 ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). "It is only through the holdings of this Court, as opposed to this Court's dicta and as opposed to the decisions of any other court, that a new rule is 'made retroactive ... by the Supreme Court' within the meaning of § 2244(b)(2)(A). *Id.,* at 668 (O'Connor, J., concurring).

In granting leave to proceed to the second threshold, the Fifth Circuit panel implicitly found that Rivera had satisfied section 2244(b)(2)(A)'s requisite showing that the claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *See Rivera II*, at *2 ("We believe that, by the standards set out in our previous opinion, he has made a *prima facie* showing to be authorized to proceed in district court only on his claim of mental retardation.") (referencing standards set out in earlier opinion, *Rivera I*, at *4-5). In *Rivera I*, the court noted that the State "concedes that under the law of this circuit the *Atkins* claim is properly before us." *Rivera I*, at *4; *see* Director's Exhibit "A" at 4. More specifically, in opposing Rivera's motion for authorization to file a successive writ, the Director stated:

> Respondent Janie Cockrell, Director of the TDCJ-Institutional Division ("the Director") concedes that under this Court's precedent, *Atkins* "is available in collateral proceedings and is retroactive." *In re Richard Head Williams*, No. 03-20205, at *2 (5th Cir. Feb. 24, 2003) (unpublished) (citing *Bell v. Cockrell,* 310 F.3d 330 (5th Cir. 2002)).

Director's Response in Opposition at 10 filed August 6, 2003 in *In re Rivera*, 5th Cir. No. 03-41065. Under *Tyler*, however, these cases do not support *Atkins*' retroactivity.

13

As the *Tyler* court emphasized, "[q]uite significantly, under [§ 2244(b)(2)(A)], the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive." 533 U.S. at 663. Importantly, it is of no moment whether the Fifth Circuit or any other court has assumed differently. As stated in *Tyler*, "[t]he new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, *but simply by the action of the Supreme Court*." 533 U.S. at 663 (emphasis added). Equally important, this Court is in no way bound by the *Rivera II* panel determination:

> Under the statute, before a state prisoner may file a second or successive habeas application, ... [t]he court of appeals must make a decision on the application within 30 days. § 2244(b)(3)(D). In this limited time, the court of appeals must determine whether the application "makes a *prima facie* showing that [it] satisfies the [second habeas standard]." § 2244(b)(3)(C). It is unlikely that a court of appeals could make such a determination in the allotted time if it had to do more than simply rely on Supreme Court holdings on retroactivity. *The stringent time limit thus suggests that the courts of appeals do not have to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance.*

*Tyler*, 533 U.S. at 664 (emphasis added). In a successive application filed in the context of last-minute death penalty litigation, the second threshold becomes all the more critical. Here, because Rivera has not shown that the Supreme Court has made *Atkins* retroactive on collateral review, his application must be dismissed.

Further, even though the Director conceded that under circuit precedent *Atkins* "is available in collateral proceedings and is retroactive," the Director has in no way waived any argument concerning retroactivity. Indeed, despite the concession, the Director also argued to the Fifth Circuit that *Atkins* has not been made retroactive by the Supreme Court:

> Initially, there is no question that § 2244(b)(2)(B) is not at issue because Rivera's *Atkins* claim is not "predicated on newly discovered facts that call into question the accuracy of a guilty verdict." *Tyler v. Cain,* 533 U.S. 656,

14

> 661-62 (2001). Moreover, Rivera is subject to § 2244(b)(2)(A), which allows
> a claim to be presented in a successive federal petition if it "relies on a new
> rule of constitutional law, made retroactive to cases on collateral review by the
> Supreme Court, that was previously unavailable."  However, the Supreme
> Court has not explicitly declared that *Atkins* is retroactive in habeas
> proceedings, as required by § 2244(b)(2)(A). *Tyler v. Cain,* 533 U.S. 656,
> 662-64 (2001).  The fact that *Atkins* might fall within an exception to the
> anti-retroactivity doctrine of *Teague v. Lane,* 489 U.S. 288 (1989), and *should*
> be made retroactive to cases on collateral review, is insufficient. *Tyler,* 533
> U.S. at 665-66.  Similarly, the fact that this Court, or any other appellate or
> lower court, might have so held is irrelevant. *Id.* at 663. Rivera's contention
> that *Atkins* "is a new rule of constitutional law made retroactive to cases on
> collateral review," Motion [for Authorization to File Successive Writ] at 4, is
> far from settled.

Director's Response in Opposition at 10-11 n.7. This argument holds true, especially in these

proceedings where the Court must review Rivera's claim under the more stringent second

threshold -- that Rivera "*shows* that the claim *satisfies* the requirements of this section." 28

U.S.C. § 2244(b)(4) (emphasis added).

Finally, to the extent Rivera would argue that *Atkins* is retroactive based on *Penry v.*

*Lynaugh,* 492 U.S. 302 (1989), no support exists for this proposition.  Nothing in *Atkins*

suggests that its new rule is retroactive to cases on collateral review despite *Penry's*

suggestive language.  To be sure, in *Penry,* the Court stated in *dicta:*

> Thus, if we held, as a substantive matter, that the Eighth Amendment prohibits
> the execution of mentally retarded persons such as Penry regardless of the
> procedures followed, such a rule would fall under the first exception to the
> general rule of nonretroactivity and would be applicable to defendants on
> collateral review.

*Penry,* 492 U.S. at 330.  This conditional statement, however, did not constitute a holding

and was made merely as a hypothetical in order for the Court to discuss and reject the

underlying claim challenging the constitutionality of executing the mentally retarded under

the then-current standards.

For the above reasons, because *Atkins* has not been expressly made retroactive by the only court that matters -- the United States Supreme Court -- this Court has no jurisdiction to consider Rivera's successive habeas application and should dismiss the writ accordingly.

## II.   Alternatively, The Court Should Dismiss Rivera's Writ As Untimely.

Rivera failed to seek federal habeas relief in a timely manner and, therefore, this Court to dismiss Rivera's successive writ petition with prejudice as time-barred pursuant to 28 U.S.C. § 2244(d).

### A.   Procedural history of Rivera's case

The Director provides the following time-line of events as a reference tool in order to prove that Rivera's writ is untimely filed, as explained fully in Part II.B. below.

In May 1994, Rivera was convicted of capital murder and sentenced to die. On direct appeal, the Texas Court of Criminal Appeals affirmed in an unpublished opinion, *Rivera v. State*, No. 71,916 (Tex. Crim. App. 1996), and Rivera did not seek certiorari review.

On April 21, 1997, Rivera filed an incomplete state habeas application and, on December 8, 1997, filed a supplemental writ petition raising a total of thirty claims. 1st SHTr 1-144.[7] On December 16, 1998, the Court of Criminal Appeals denied Rivera's first state habeas corpus petition. *Ex parte Rivera*, No. 27,065-01 (unpublished order).

Rivera filed a federal writ petition in this Court in July 1999 raising twenty-four grounds for relief. *Rivera v. Johnson*, No. B-99-123 (S.D. Tex.) at Docket Entries ("DE") #4 & #5. On August 27, 2001, United States Magistrate Judge Black issued a report

---

[7]    "1st SHTr" refers to the state habeas transcript -- the transcript of pleadings and documents filed during Rivera's first state habeas proceedings. Each citation is followed by page reference. These records were previously provided to this Court during Rivera's original federal habeas proceedings.

recommending the denial of an evidentiary hearing, the granting of the Director's motion for summary judgment, and the denial of relief. DE #54. In October 2001, United States District Judge Vela adopted the report and recommendation, and denied all habeas relief. DE #67. On December 3, 2001, the Court denied a certificate of appealability ("COA"), and Rivera timely filed notice of appeal. DE #75 & #77.[8]

In May 2002, Rivera applied to the Fifth Circuit Court of Appeals for a COA which was denied in an unpublished per curiam opinion issued November 27, 2002. *Rivera v. Cockrell*, No. 01-41317 (5th Cir. 2002). Rivera sought neither rehearing nor certiorari review. Thereafter, on March 14, 2003, the 197th District Court of Cameron County, Texas, set Rivera's execution for Wednesday August 6, 2003.

Two hundred and five days after the Fifth Circuit denied COA, on June 20, 2003, Rivera filed a successive skeletal application (or first subsequent application) in the state trial court arguing: (1) that he is mentally retarded so that his execution is barred by the Eighth Amendment under *Atkins*; (2) that he is actually innocent such that his execution is unconstitutional under *Herrera v. Collins*, 506 U.S. 390 (1993), and Texas case law; and (3) that his death sentence violates *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the jury that sentenced Rivera to death in 1994 did not make a factual determination that he is not mentally retarded. 2nd SHTr - vol. I at 1-9, 21-

---

[8]       While Rivera's federal writ was pending, on December 6, 2001, Rivera moved the state trial court for postconviction DNA testing pursuant to TEX. CODE CRIM. PROC. art. 64.01, but the trial court denied the request. Oral argument was heard at the Court of Criminal Appeals on September 18, 2002, on Rivera's appeal. On November 6, 2002, the Court of Criminal Appeals affirmed the trial court's order denying DNA testing. *Rivera v. State*, 89 S.W.3d 55 (Tex. Crim. App. 2002).

64;[9] *see* Director's Exhibit "C" (cover sheets indicating file stamped date). Rivera also separately moved the trial court for expert psychiatric assistance and for postconviction DNA testing.[10] 2nd SHTr - vol. I at 16-17, 18-19. Between June 20 and July 24, 2003, Rivera filed a total of five supplements to his state habeas application. *Id.* at 65-78 (first supplement); *id.* at 79-91 (second supplement); 2nd SHTr. - vol III at 1-165 (third supplement); 2nd SHTr at Rivera's "Fourth Supplement to Subsequent Application for Writ of Habeas Corpus" (received by Court of Criminal Appeals on July 24, 2003); and 2nd SHTr at Rivera's "Fifth Supplement to Subsequent Application for Writ of Habeas Corpus" (received by Court of Criminal Appeals on July 24, 2003); *see* Director's Exhibit "D" (five cover sheets).

On July 25, 2003, the Texas Court of Criminal Appeals dismissed the successive writ, finding that Rivera failed to make a *prima facie* showing of retardation and barring all other claims as an abuse of the writ under TEX. CODE CRIM. PROC. art. 11.071, § 5(a). *Ex parte Rivera*, 2003 WL 21752841 (Tex. Crim. App. 2003); *see* Director's Exhibit "B." One week later, on August 1, 2003, Rivera submitted a suggestion for rehearing. 2nd SHTr at Rivera's "Suggestion for Rehearing"; *see* Director's Exhibit "E" (cover sheet). On August 5, 2003, the Court of Criminal Appeals ordered that such a pleading is not authorized under TEX. R.

---

[9] "2nd SHTr" refers to the state habeas transcript of pleadings and documents filed during Rivera's second state habeas proceedings. Three volumes of records were filed in this case -- two are listed as "Clerk's Record" and were mailed to the Court of Criminal Appeals on 07/10/03, and 07/17/03 respectively. One is listed as "Supplemental Clerk's Record" and indicates it was mailed on July 22, 2003. The volumes will be referred to in chronological order as "vol. I," "vol. II," and "vol. III," and each citation will be followed by page reference. These habeas records have been copied and are being forwarded to the Court under separate cover.

[10] As explained in note 8 *supra*, Rivera had previously moved for DNA testing. Rivera's latest request for DNA was simply a repeat of his earlier, unsuccessful request.

18

APP. P. 79.2(d), and declined to reconsider the matter on its own initiative. *Ex parte Rivera*, No. 27,065-02 (Tex. Crim. App. 2003) (unpublished per curiam order); *see* Director's Exhibit "F" (copy of order).

Additionally, on August 5, 2003, Rivera moved the Fifth Circuit for authorization to file a successive federal habeas petition, and the Director opposed the request. On August 6th, the court denied Rivera's motion, finding that Rivera failed to make a *prima facie* showing of retardation based on the evidence presented to the state court, and that "Rivera's *Atkins* claim gains its strength by the report of Dr. Garnett which was never presented to the state court until the motion for reconsideration of the decision by the Texas Court of Criminal Appeals denying relief." *Rivera I*, at \*10, 6; *see* Exhibit "A" at 10, 6.

On August 6, 2003 -- the afternoon of his scheduled execution -- Rivera petitioned for certiorari review of the Texas court's July 25th and August 5th opinions on the dismissed state writ, and the Director opposed the request. The United States Supreme Court denied certiorari review. *Rivera v. Texas*, No. 03-5700, 2003 WL 21803142 (2003).

Just a few hours before his impending execution, Rivera petitioned the United States Supreme Court for an original writ of habeas corpus and applied for a stay of execution, and the Director again opposed the requests. The United States Supreme Court denied habeas corpus relief, and denied Rivera's application for stay of execution. *In re Jose A. Rivera*, No. 03-5710, 2003 WL 21803022 (2003).

Next, Rivera filed a third state habeas petition (or second subsequent application), again arguing that he is mentally retarded yet this time relying on the additional materials previously submitted in Rivera's August 1, 2003 suggestion for reconsideration. 3rd SHTr

19

at Rivera's "Successor Application for Writ of Habeas Corpus and Stay of Execution.";[11]
*see* Director's Exhibit "G" (copy of cover sheet). The Texas Court of Criminal Appeals
dismissed this application as an abuse of the writ. *Ex parte Rivera*, No. 27,065-03 (Tex.
Crim. App. 2003) (unpublished per curiam order); *see* Director's Exhibit "H" (copy of
order). In its order, the Texas court clarified that it had, in fact, considered the materials
submitted and arguments made in support of Rivera's suggestion for reconsideration, but
declined to reconsider the matter on the court's initiative. *See id.*

Finally, Rivera moved the Fifth Circuit Court of Appeals to grant leave to file a
successive federal habeas petition, arguing that he is mentally retarded and asking the court
to review all the evidence considered by the Texas court during the third state habeas
proceedings. At nearly 9 p.m. on August 6, 2003, the Fifth Circuit found that Rivera made
a sufficient *prima facie* showing of retardation to be authorized to proceed on a successive
writ, and granted a stay of execution. *Rivera II*, at *2. Five days later on Monday, August
11, 2003, Rivera filed his successive federal writ in this Court. *Rivera v. Cockrell (now
Dretke)*, No. B-03-139 (S.D. Tex.) at DE #1.

**B.      Rivera's successive habeas petition is untimely as a matter of law.**

Although Rivera received permission to file a successive habeas petition, he failed to
file his writ in a timely manner. Consequently, the Court should dismiss Rivera's writ
petition with prejudice as time-barred pursuant to 28 U.S.C. § 2244(d).

Prior to the enactment of the Anti-terrorism and Effective Death Penalty Act
("AEDPA") on April 24, 1996, "a prisoner faced no strict time constraints" on seeking
federal habeas corpus relief. *Villegas v. Johnson*, 184 F.3d 467, 468 (5th Cir. 1999); *see*

---

[11]      "3rd SHTr" refers to the pleadings and documents filed in Rivera's third state habeas
proceeding which occurred on August 6, 2003. These records are also being provided to the Court.

*also Davis v. Johnson*, 158 F.3d 806, 809 n.4 (5th Cir. 1999). However, following its enactment, for the first time state prisoners faced "an explicit limitation period" for filing federal habeas petitions. *Fisher v. Johnson*, 174 F.3d 710, 711 (5th Cir. 1999) (citing *Lonchar v. Thomas*, 517 U.S. 314, 327 (1996)); *see also Fields v. Johnson*, 159 F.3d 914, 915 (5th Cir. 1998) ("AEDPA instituted for the first time a limitations period for state prisoner habeas applications under 28 U.S.C. § 2254 and for federal prisoner motions for reconsideration of sentence under 28 U.S.C. § 2255.")

Under the AEDPA, petitioners have a one-year filing period for asserting claims based on new rules of constitutional law. Unless tolled, the one-year period of limitation runs from the date "on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).[12] *Atkins*, which held that the Eighth Amendment prohibits the execution of mentally retarded offenders as defined by state law, was decided on June 20, 2002. Pursuant to § 2244(d)(1)(C), Rivera therefore had until June 20, 2003 in which to raise his *Atkins* claim in a timely manner in federal court.

In certain instances, however, the one-year statutory period may be extended because the AEDPA allows for tolling during the pendency of properly filed applications for state court collateral review. 28 U.S.C. § 2244(d)(2). Yet the only way the filing deadline is tolled is for a petitioner to have properly filed an application for state court collateral review *prior to* expiration of the petitioner's one-year federal window for filing.

---

[12]    As explained in Part I.B. *supra*, the Director maintains that although *Atkins* is a new rule of constitutional law, it was not expressly made retroactive and, therefore, the Court does not have jurisdiction to consider Rivera's writ petition.

21

As the procedural history in Part II.A. above makes clear, Rivera was entitled to such tolling because he filed a successive state habeas application in the trial court on June 20, 2003 -- the last remaining day of the one-year filing period -- raising, among other issues, the instant *Atkins* claim. *See* Director's Exhibit "C." The Texas Court of Criminal Appeals dismissed the writ on July 25, 2003. *Ex parte Rivera*, 2003 WL 21752841 (Tex. Crim. App. 2003); *see* Director's Exhibit "B." On August 1, 2003, Rivera submitted a suggestion for rehearing which was ultimately rejected by the Texas court on August 5, 2003. *Ex parte Rivera*, No. 27,065-02 (Tex. Crim. App. 2003) (unpublished per curiam order); *see* Director's Exhibits "E" & "F."

When Rivera filed his state writ on June 20, 2003 -- a full one year after the *Atkins* opinion was issued -- he literally had no time remaining on the one-year federal filing period. Nevertheless, the limitations period was tolled for the entire time Rivera's successive state writ was pending all the way until his motion for reconsideration was denied -- in this case, from June 20, 2003 (writ filed) until August 5, 2003 (reconsideration denied). *See, e.g., Villegas*, 184 F.3d at 470 & n. 2 (holding that successive state habeas petition will toll the federal filing period under § 2244(d)(2); *Lookingbill v. Cockrell*, 293 F.3d 256, 261 (5th Cir. 2002) (citing *Emerson v. Johnson*, 243 F.3d 931, 935 (5th Cir. 2001) (tolling for period during which motion for reconsideration of denial of writ was pending), and *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001) (tolling for time between date of trial court's disposition of state writ and petitioner's timely filing for direct review at next level)). Yet instead of Rivera's federal filing period expiring on August 5th when reconsideration of the state writ was denied, Rivera extended the period further by filing a third state writ (or second successive writ) on August 6, 2003, which was dismissed the same day. *See* Director's Exhibits "G" & "H." That third writ also served to toll the federal filing period,

but only for one day. *Villegas*, 184 F.3d at 470 & n. 2 (successive state writs toll filing period under § 2244(d)(2)).

As a result, on August 6, 2003, when the Fifth Circuit granted authorization for Rivera to file a successive federal petition raising the *Atkins* issue, he had no time remaining in the one-year limitations period and, thus, should have filed the writ in federal court at the absolute latest on Thursday, August 7, 2003. Here, Rivera did not file his federal petition until Monday, August 11, 2003, thus rendering his writ filed four days out of time.

To the extent Rivera would argue that his writ is considered "filed" when he deposited it for overnight mail delivery, then he is mistaken. Although a *pro se* prisoner may take advantage of the "mailbox rule," *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), the Fifth Circuit has expressly declined to extend this rule to prisoner litigants who are represented by counsel:

> A prisoner litigant who is represented by counsel is not incapable of controlling the filing of pleadings. Instead, he has an agent through whom he can control the conduct of his action, including the filing of pleadings. As a result, he is not restricted in the same manner as one who is representing himself, nor is he dependent on the prison system or its officials for his ability to pursue an action or file necessary pleadings. Consequently, the justifications for leniency with respect to *pro se* prison litigants do not support extension of the "mail box" rule to prisoners represented by counsel.

*Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (footnote omitted), *cert. denied*, 123 S. Ct. 2277 (2003).

Rivera has been represented by counsel throughout his collateral appeals and, consequently, he is not entitled to the benefit of the mailbox rule. Rivera was represented by attorneys David Sergi and Larry Warner during his original federal habeas proceeding, during his subsequent state habeas proceeding, and while Rivera sought leave from the Fifth Circuit to file a successive federal petition. These attorneys were counsel of record when

Rivera filed the second state writ (first successive writ) raising the *Atkins* claim. Attorneys Jim Marcus and Bryce Benjet began representing Rivera on August 6, 2003 when he filed an original writ of habeas corpus to the United States Supreme Court, when he filed his third state habeas application, and when he again sought leave from the Fifth Circuit to file a successive federal petition. Both Marcus and Benjet have moved to be appointed (albeit temporarily) in Rivera's case before this Court. Most importantly, attorneys Marcus and Benjet filed Rivera's successive federal petition made the basis of this motion on August 11, 2003. Given these facts, Rivera cannot avail himself of the mailbox rule. However, assuming arguendo the rule could apply to Rivera, the cover letter accompanying Rivera's successive federal writ petition evidences that it was deposited in overnight mail delivery on Saturday, August 9th and, thus, was still filed two days past the August 7th deadline. *See* Director's Exhibit "I" (copy of cover letter).

### C.    Rivera is not entitled to equitable tolling as a matter of law.

Although the Fifth Circuit has held that the one-year statute of limitations is not jurisdictional and, therefore, is subject to equitable tolling, Rivera's case does not present the necessary "rare and exceptional circumstances" to warrant such tolling. *Davis v. Johnson*, 158 F.3d 806, 810-11 (1999); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (tolling applies only in "rare and exceptional circumstances.") (citing *Davis*).

"Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights ... Where [appellant] could have filed his claim properly with even a modicum of due diligence, we find no compelling equities to justify tolling." *Rashidi v. American President Lines*, 96 F.3d 124, 127-28 (5th Cir. 1996); *see Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Consequently, an attorney's intentional deceit could warrant

equitable tolling, but only if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations. *United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir.2002).

On the other hand, a "garden variety claim of excusable neglect" does not support equitable tolling. *Rashidi,* 96 F.3d at 128; *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (citing *Rashidi*). "Many courts have considered the question whether attorney error constitutes 'rare and exceptional circumstances' and have held that it does not." *Cousin v. Lensing*, 310 F.3d at 848 & n.4 (citing *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000) (holding that the death of the attorney's father two weeks before filing deadline did not constitute extraordinary circumstance for equitable tolling purposes); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir.2000) (holding that attorney's confusion over applicability of § 2244(d)(1) did not justify equitable tolling); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir.2000) (holding that attorney's mistaken interpretation of § 2244(d) limitation provision did not justify equitable tolling); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir.1999) (holding that attorney's miscalculation of limitations period was not valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir.1999) (holding that untimeliness resulting from attorney's use of ordinary mail did not justify equitable tolling)). In reaching the same determination in the Fifth Circuit, the court recently explained,

> If there were ever any doubt that an attorney's error or neglect does not warrant equitable tolling, our recent decision in *Cousin v. Lensing*, 310 F.3d 843 (5th Cir.2002), erased it: "[M]ere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." *Id*. at 849.
>
> This holding was long implied in our caselaw and should not be surprising. As we noted in *Cousin*, a prisoner has no right to counsel during post-conviction proceedings. *Id*. at 849 (citing *Coleman v. Thompson*, 501 U.S. 722, 752 ... (1991)). This is why our equitable tolling cases do not laboriously

25

apply the familiar test of *Strickland v. Washington*, 466 U.S. 668 ... (1984): Ineffective assistance of counsel is irrelevant to the tolling decision. Likewise, a petitioner's own ignorance or mistake does not warrant equitable tolling, and it would be rather peculiar to treat a trained attorney's error more leniently than we treat a pro se litigant's error. *Cousin*, 310 F.3d at 849 (citing *Coleman*, 184 F.3d at 403).

*United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (footnote omitted), *cert. denied*, 123 S. Ct. 2630 (2003);[13] *see also United States v. Sealed Appellant 1*, No. 02-41275, 2003 WL 21697212, *1 (5th Cir. July 21, 2003) (citing *Cousin*). Because mere attorney error or neglect is not a "rare and exceptional circumstance," a district court abuses its discretion in finding that such instance warrants equitable tolling. *Riggs*, 314 F.3d at 799 (a court by definition abuses its discretion when it makes an error of law) (citing *United States v. Delgado-Nunez*, 295 F.3d 494, 496 (5th Cir. 2002))

In keeping with such precedent, circuit authority holds that "counsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [petitioner's] habeas petition in the district court within the one-year limitations period." *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002), *cert. denied*, 123 S. Ct. 1621 (2003). Importantly, the *Fierro* case involved the dismissal of a successive federal habeas petition as being time-barred.[14] As the *Fierro* Court made abundantly clear, neither "excusable

---

[13]    Although the *Riggs* court noted that a district court's error in unintentionally misleading a petitioner about the statute of limitations warrants equitable tolling, *United States v. Patterson*, 211 F.3d at 931-32, Rivera certainly cannot contend that he was in any ways misled by the courts regarding the time period for filing his successive writ.

[14]    Fierro had been granted leave to file a successive writ in which he sought to raise a claim that a police officer who obtained a confession from Fierro lied in his testimony during the suppression hearing. *Fierro*, 294 F.3d at 676. However, just as in Rivera's case, after receiving permission from the Fifth Circuit to proceed, Fierro failed to file his writ in the district court in a timely manner. The Western District of Texas refused to toll the limitations period, and the Fifth Circuit upheld that determination, holding that (1) Fierro's motion for authorization to file a

neglect" nor ignorance of the law is sufficient to justify equitable tolling. *Id.* at 682 (citing *Coleman*, 184 F.3d at 402). In addition, the Fifth Circuit found a district court abused its discretion by equitably tolling in a situation where an attorney gave his client incorrect legal advice regarding the time for filing a § 2255 motion, noting that the movant had presented no evidence that the attorney had intentionally deceived him. *Riggs*, 314 F.3d at 799-800.

In the instant case, there can be no justification for Rivera filing his skeletal state habeas successive application on June 20, 2003 -- the last day of the one-year period for filing claims based on the Supreme Court's June 20, 2002 *Atkins* decision. As the Fifth Circuit explained in *Ott v. Johnson*, 192 F.3d 510, 514 (5th Cir. 1999), where the state habeas application was not filed until one day before the expiration of the AEDPA's one-year grace period, this action "necessarily mandated a swift filing of the federal habeas application following the denial of the state petition." However, no "swift filing" occurred in Rivera's case. Instead, Rivera filed his federal habeas petition four days late after having been granted authorization and granted a stay of execution by the Fifth Circuit so that successive federal proceedings could begin. It is inexplicable why counsel waited so long to file the state habeas petition and then allowed the federal filing period to expire before filing the successive federal writ. The fact that Rivera's instant federal petition is time-barred is purely the result of counsel's error or neglect, rather than any intentional deception on counsel's part, and as such, cannot justify equitable tolling.

---

successive writ is not itself an "application" for a writ of habeas corpus and, thus, does not statutorily toll the deadline, and (2) Fierro's mistaken assumption that the one-year statute of limitations does not apply to successive writ petitions does not justify equitable tolling. *Fierro*, 294 F.3d at 679-81 (statutory tolling), 681-84 (equitable tolling); *see also Woodford v. Garceau*, 123 S. Ct. 1398, 1403 (2003) (for AEDPA purposes, a case does not become "pending" until an actual application for habeas corpus relief is filed in federal court).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Rivera's successive federal habeas petition for lack of jurisdiction under 28 U.S.C. § 2244(b)(4). Alternatively, should the Court find that it has jurisdiction to consider the writ, the Court should nevertheless dismiss the petition as untimely filed under 28 U.S.C. § 2244(d).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

JAY KIMBROUGH
Deputy Attorney General
for Criminal Justice

GENA BUNN
Chief, Postconviction Litigation Division
Assistant Attorney General

KATHERINE D. HAYES*
Assistant Attorney General
*Attorney-in-charge
State Bar No. 00796729
Southern District Admission No. 22698
Katherine.Hayes@oag.state.tx.us

Office of the Attorney General of Texas
ATTN: Postconviction Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1600
Telecopier: (512) 320-8132
ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing motion to dismiss has been served by overnight mail delivery on Tuesday, September 23, 2003, addressed to counsel for petitioner as follows:

Bryce Benjet
TEXAS DEFENDER SERVICE
510 S. Congress, Suite 307
Austin, Texas 78704
contact # (512) 320-8300

Jim Marcus
TEXAS DEFENDER SERVICE
412 Main Street, Suite 1150
Houston, Texas 77002
contact # (713) 222-7788

KATHERINE D. HAYES
Assistant Attorney General

29

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-139 |
| | § | **CAPITAL LITIGANT** |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent | § | |

## ORDER DISMISSING WRIT PETITION FOR LACK OF JURISDICTION

The Court, having considered Respondent's motion to dismiss (Docket Entry #7) and

Petitioner's application for a writ of habeas corpus (Docket Entry #1), is of the opinion that

Respondent's motion should be granted. Accordingly, Petitioner's Application for a Writ

of Habeas Corpus is DISMISSED WITH PREJUDICE for lack of jurisdiction pursuant to

28 U.S.C. § 2244(b)(4).

IT IS SO ORDERED.

SIGNED _____, 2003.


_____
FILEMON B. VELA
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA, | § | |
|      Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-139 |
| | § | **CAPITAL LITIGANT** |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|      Respondent | § | |

## ORDER DISMISSING WRIT PETITION AS TIME-BARRED

The Court, having considered Respondent's motion to dismiss (Docket Entry #7) and Petitioner's application for a writ of habeas corpus (Docket Entry #1), is of the opinion that Respondent's motion should be granted. Accordingly, Petitioner's Application for a Writ of Habeas Corpus is DISMISSED WITH PREJUDICE as untimely filed pursuant to 28 U.S.C. § 2244(d).

IT IS SO ORDERED.

SIGNED _____, 2003.


_____
FILEMON B. VELA
UNITED STATES DISTRICT JUDGE

# APPENDIX

# INDEX TO APPENDICES

A    *In re: Jose Alfredo Rivera*, No. 03-41065 (5th Cir. 2003) (per curiam unpublished opinion denying leave for Rivera to file successive federal writ petition) ("Rivera I")

B    *Ex parte Rivera*, No. 27,065-02, 2003 WL 21752841 (Tex. Crim. App. July 25, 2003) (per curiam unpublished order dismissing second state writ)

C    Cover sheets evidencing date second state habeas application was filed

D    Cover sheets evidencing dates Rivera's five supplemental writs were filed

E    Cover sheet evidencing date Rivera's "Suggestion for Rehearing" was filed

F    *Ex parte Rivera*, No. 27,065-02 (Tex. Crim. App. 2003) (unpublished per curiam order denying rehearing)

G    Cover sheet evidencing date Rivera's third state habeas application was filed

H    *Ex parte Rivera*, No. 27,065-03 (Tex. Crim. App. 2003) (unpublished per curiam order dismissing third state writ)

I    Cover sheet accompanying Rivera's successive federal habeas petition



IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-41065

---

IN RE: JOSE ALFREDO RIVERA,

Movant.

U. S. COURT OF APPEALS
**FILED**

AUG 6 2003

CHARLES R. FULBRUGE III
CLERK

---

Motion for an order authorizing the
United States District Court for the Southern
District of Texas, Brownsville Division, to consider
a successive habeas 28 U.S.C. § 2254 application

---

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

## I

Jose Alfredo Rivera seeks leave to file a successive petition for writ of habeas corpus and a stay of execution. Rivera was convicted and sentenced to death for murdering a child during an aggravated sexual assault. Nine years ago the Texas Court of Criminal Appeals affirmed the judgment and sentence and Rivera did not seek certiorari review. Rivera filed a state habeas petition on December 8, 1997. On December 16, 1998, the Court of Criminal Appeals adopted the findings of the habeas court and denied the

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

petition. Rivera's federal habeas petition followed in July 1999, asserting some twenty-four grounds for relief. We denied a certificate of appealability on all claims in a per curiam filed November 27, 2002. Rivera's subsequent state writ has been denied by the Texas Court of Criminal Appeals which yesterday refused to reconsider its decision.

II

Rivera seeks a certificate of appealability on two claims: He contends he has made a prima facie case that he is retarded, relying upon *Atkins v. Virginia*,[1] and that he is innocent of the crime for which he was sentenced to death.

III

The Texas Court of Criminal appeals concluded that Rivera had failed to set out "sufficient facts to raise a prima facie claim of retardation," that he failed to make "this threshold showing." It then dismissed the subsequent writ application as an abuse of the writ under Article 11.071, Section 5(a). The court observed:

> The evidence he has submitted to this Court includes applicant's grade reports for first through sixth grades. These records indicate that applicant was born on December 23, 1962, and began school in 1969. He earned Cs in all classes and terms except one D in one term. He repeated first grade and was placed in special classes, where he earned Cs, Bs, and one D. He also repeated fifth grade. By the time he finished sixth grade, his grades had fallen to mostly Ds and Fs in his academic subjects, including Spanish, his home language and in which he had previously earned As. He continued to earn

---

[1] 536 U.S. 304 (2002).

2

Cs or less in academic subjects, but earned As and Bs in Mechanical Repairs. At age 17, applicant withdrew from school while in the ninth grade. He earned a GED in 1980. The evidence offered by applicant does not show the required "significantly subaverage general intellectual functioning."

Affidavits from three of applicant's sisters recount that applicant was a slow learner and apparently never learned to read well, tell time, or drive a car. Because he did not read well, applicant had difficulty in filling out job applications; his father found work for him. Applicant also forgot things and was difficult to understand when he spoke. One sister also stated that applicant began to sniff paint when he was young and continued to do so through high school. Other than allegations that he did not work much, there is no evidence of deficits in adaptive behavior.

Although applicant did not submit the results of an IQ test, we have reviewed the record from direct appeal. Included in that record are a pen packet which shows that applicant was tested and scored an IQ of 92. Also in the record from direct appeal is the affidavit of a psychiatrist who testified for the defense during the punishment phase. The affidavit indicates that the expert's evaluation of applicant in anticipation of trial was consistent with an IQ score of 92. The affidavit also opines that the recorded IQ was lowered by long-standing inhalant abuse.

Medical records for applicant indicate a head injury in 1990 and [a] detoxification admission to a mental-health facility in 1985. There is no mention of mental retardation.

A remand of a subsequent application raising an *Atkins* claim is appropriate when an applicant sets out sufficient facts to raise a *bona fide* claim of mental retardation, but in the instant cause applicant has failed to make this threshold showing. Because of applicant's failure to produce "sufficient specific facts" to support an *Atkins* claim, we dismiss applicant's

3

subsequent writ application as an abuse of the writ under
Article 11.071, Section 5(a).[2]


1


The State concedes that under the law of this circuit the
*Atkins* claim is properly before us. We recently explained that a
prima facie showing within the meaning of 28 U.S.C. § 2244(b)(C)[3]
is "'simply a sufficient showing of possible merit to warrant
fuller exploration by the district court.... If in light of the
documents submitted with the application it appears reasonably
likely that the application satisfies the stringent requirement for
the filing of a second or successive petition, we shall grant the
application.'"[4] As we explained in *In re Morris*, the grant of
authority to file a claim of retardation is tentative in the sense
that the district court must dismiss the motion without reaching
its merit if Rivera fails to meet the requirements for filing.

---

[2] *Ex Parte Rivera*, No. 27,065-02, slip op. at 2-3 (Tex. Crim.
App. July 25, 2003).

[3] The Court of Appeals may authorize the filing of a second or
successive application only if it determines that the applicant
makes a prima facie showing that the application satisfies the
requirements of this subsection.

[4] *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quoting
*Bennett v. United States*, 119 F.3d 468, 469-70, (7th Cir. 1997));
see *Reyes-Requena v. United States*, 243 F.3d 893, 898-99 (5th Cir.
2001).

4

The Supreme Court in *Atkins* pointed to the American Association on Mental Retardation and American Psychiatric Association's three-prong definition of mental retardation,[5] which instructs that mental retardation is characterized by (1) subaverage general intellectual functioning (*i.e.*, an IQ of approximately 70 to 75 or below), existing concurrently with (2) related limitations in two or more of the following adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work, and (3) onset before the age of eighteen.[6]

2

The State first argues that the *Atkins* claim of retardation is procedurally barred, pointing out that the Texas Court of Criminal Appeals refused to review claims asserted in the writ application; specifically that it relied upon Section 5(a) of Article 11.071 of the Texas Code of Criminal Procedure, forbidding in successive habeas petitions allegations for which the legal and factual basis was previously available.

The State argues with force that Rivera failed to provide the state courts with sufficient facts to raise a *bona fide* claim of mental retardation under *Atkins*.   The argument continues that

---

[5] *Atkins*, 536 U.S. at 308 n.3.

[6] *Id.*

5

Rivera failed to provide the Texas Court of Criminal Appeals with a fair opportunity to apply the controlling federal principles; that of the twenty-three exhibits attached to Rivera's motion, seven, Numbers 14, 16, 17, 18, 19, 20, and 23, were never presented to the Texas court.

Moreover, four exhibits, 1, 2, 3, and 15, were first offered to the Texas Court of Criminal Appeals in Rivera's suggestion for a reconsideration of the dismissal of the successive state writ. The Texas Rules of Appellate Procedure explicitly provide that "a motion for rehearing an order that denies habeas corpus relief under Code of Criminal Procedure articles 11.07 or 11.071, may not be filed."[7] And the State urges that the Texas Court of Criminal Appeals explicitly relied upon this independent state ground in refusing relief.

We agree with the latter contention. It is plain that Rivera's *Atkins* claim gains its strength by the report of Dr. Garnett which was never presented to the state court until the motion for reconsideration of the decision by the Texas Court of Criminal Appeals denying relief. Dr. Garnett's report described the following limitations in Rivera's intellectual functioning:

> Academic records can often be utilized in an effort to aid in the determination of Mental Retardation. Unfortunately, again Mr. Rivera's records are limited and offer only clues and indicators. It is noted in his school records that his grades were poor (C's and D's)

---

[7] Tex. R. App. P. 79.2(d).

6

throughout his academic experience. According to those records, he repeated several grades (D's and F's). He was placed in Special Education and could not produce successful grades even there. At one point, 1977-78, even in special classes he was failing and records indicate that his grades in Math and Science were changed from failing grades (63 & 65) to passing (70 & 70) on his transcripts so that he could be "promoted" to the next grade. He then failed and produced no credits for the next two years. Mr. Rivera also received failing scores in the ninth grade "CVAE" program. Hugh Albright, a teacher of Mr. Rivera's, reports that the material taught at "CVAE" was at the third to fifth grade level.

It is important to note that Mr. Rivera was in special classes for most of his academic career. However no testing was noted in his records. His placement in special classes seems to be a defacto [sic] determination of Mental Retardation, since it must be assumed that testing of Mr. Rivera was conducted for admission. TEA requires such assessments for admission to special education programs such as he was in. Affidavits were taken from teachers who knew him then, and were supportive of such conclusions (noted later in this statement).

Mr. Rivera's achievement scores also suggest significant limitations in intellectual functioning. At age 11, while in the fifth grade, Mr. Rivera's test scores showed his reading achievement level at less than third grade. Two years later, after repeating the fifth grade, Mr. Rivera was found to "need improvement" and was reading assignments identified by a teacher at his school at only the first or second grade level. Mr. Rivera continued to lack basic academic abilities as reflected in achievement testing conducted by TDCJ Windham School District. In 1992, at age 19, testing revealed that his grade level was:

Math 5.0
Reading 4.1
Language 3.2
Comp. 4.1

Thus, as an adult, Mr. Rivera was performing academically at the level of a 10 year old. Another significant fact is that Mr. Rivera's TDCJ records reflect he began sniffing paint at the age of 14. His childhood use of

inhalants is also confirmed in the affidavit of his sister. The abuse of inhalants has been directly linked to brain damage and could easily have resulted in further impairment in Mr. Rivera's intellectual functioning.

Dr. Garnett cast doubt upon test scores appearing on the record and pointed to evidence of deficits in Rivera's adaptive skills, including his social promotions to the ninth grade where he dropped out of school entirely. He points out that by age 14 Rivera's test scores "clearly demonstrate" that he lacked basic reading skills and "could not master phonetics, vocabulary development, and comprehension." By age fourteen Rivera was unable to make change from a dollar, could not add or subtract well, and could not multiply at all. He was placed in special education classes. Dr. Garnett pointed to other adaptive deficits, including lack of personal hygiene and basic living skills such as the ability to tell time, to obtain a drivers license, or maintain a bank account, none of which he could do. He was unable to obtain any job for himself, and those obtained for him by his father he could not hold.

As Dr. Garnett put it:

> What is clear from all of the accounts of teachers and Mr. Rivera's family, is that Mr. Rivera was unable to take care of the day to day tasks such as hygiene, finding and keeping a job, paying bills, or fixing things around the house without help and direction from others. Reports from MHMR and professionals who evaluated Mr. Rivera are also strongly suggestive of Mental Retardation. A diagnosis from MHMR in 1985 by Pedro Ruggero, M.D., a staff psychiatrist at the Tropical Texas MHMR Center[, that] described Mr. Rivera included "Dependent Personality." The symptomatic criteria for

8

that diagnosis includes many of the characteristics that are common to Mental Retardation and mistakenly aligned with other diagnoses. It appears that this was so in this case. This disorder is characterized by behaviors such as an inability to make everyday decisions without advice or reassurance from others; allows others to make most important decisions; agrees with people even when he or she believes they are wrong; has difficulty initiating projects or doing things on his own; volunteers to do things that are unpleasant or demeaning in order to get other people to like him; and feeling uncomfortable when alone. All of these behaviors are also seen in persons with mental retardation.

Rivera urges in reply to the State's contention that the exhibits to the motion for reconsideration are not to be considered that he did not "fail" to develop the factual record before the State court through any fault of his own. He makes an argument that "he sought funds to retain an expert in a motion filed in conjunction with his successive application for habeas corpus and that the State trial court did not have the authority to decide the request for expert assistance unless the Texas Court of Appeals remanded the application to the trial court"; that the dismissal by the Court of Criminal Appeals was a "de facto" denial of the request before the trial court. This confusing response is clear in one respect. It does not explain the filing of Dr. Garnett's report only in support of its motion for reconsideration. Nor do we have a finding labeled "writ abuse" by the Court of Criminal Appeals that is no more than a ruling that the factual submission of retardation does not meet its requirement of a threshold showing. Rather, we have an independent state ground resting on a

9

precisely stated State rule of procedure.  A recitation in the State court's order that "moreover, upon due consideration, we decline to reconsider the matter on our own initiative" is no ruling on the merits.  It was rather a refusal to consider sua sponte.

Examining evidence that was properly presented to the Texas court, we are persuaded that no prima facie case of retardation has been presented and no authorization to pursue this claim in a successive writ ought to be granted.

IV

Rivera in his second claim asserts his actual innocence, relying upon an October 1999 recantation of co-defendant Zavala. The State responds that Rivera has failed to show that the factual predicate for this claim could not have been discovered through the exercise of diligence, pointing to 28 U.S.C. § 2244(b)(2)(B)(i).

We have consistently declined the view that actual innocence is an independent basis for a constitutional claim.[8]  In *Herrera v. Collins*,[9] the Supreme Court explained, "our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the

---

[8] *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

[9] 506 U.S. 390 (1993).

10

merits, even though his habeas petition would otherwise be regarded as successive or abusive."[10]  The State contends that Rivera's claim of innocence at best provides a gateway for the district court to consider claims regarding Zavala's recantation, specifically that the State withheld evidence of Rivera's innocence in not providing defense counsel with a statement, and alternatively, if counsel had the statement, he was ineffective for not using it.

We, as the State, find this contention meritless in that Rivera fails to show that the factual predicate for this claim could not have been discovered through the exercise of diligence. 28 U.S.C. § 2244(b)(2)(B)(i).  Rivera's counsel does not recall whether he was furnished any statement of Zavala, an inadequate basis for proceeding on any *Brady* claim and no explanation has been offered for failure to discover any ineffectiveness.  We deny authorization to file the claim of actual innocence in this successive petition.

V

The motion for authorization to file a successive petition and the request for stay of execution are DENIED.

---

[10] *Id.* at 416-17.

11

# EXHIBIT "B"

Only the Westlaw citation is currently available.

UNDER TX R RAP RULE 77.3, UNPUBLISHED OPINIONS MAY NOT BE CITED AS AUTHORITY.

Court of Criminal Appeals of Texas, En Banc.

Ex parte Jose Alfredo RIVERA, Applicant.

No. 27065-02.

July 25, 2003.

After his capital murder conviction and death penalty were affirmed and his first application for writ of habeas corpus was denied, applicant filed subsequent writ of habeas corpus from Cameron County. The Court of Criminal Appeals held that applicant did not show required significantly subaverage general intellectual functioning.

Writ application dismissed.

Habeas Corpus ⊕—508

197k508

Habeas corpus applicant did not show significantly subaverage general intellectual functioning, as required in seeking relief from death penalty on grounds of mental **retardation**; record indicated that although applicant withdrew from school while in ninth grade, he earned his GED, there was no evidence of deficits in adaptive behavior, applicant had IQ of 92, and there was no mention of mental **retardation.** Vernon's Ann.Texas C.C.P. art. 11.071, § 5(a).
On Application for a Writ of Habeas Corpus from Cameron County.

Before the court en banc.

### ORDER

PER CURIAM.

**\*1** Applicant was convicted of capital murder and assessed the death penalty in 1994. This Court affirmed the conviction. *Rivera v. State,* No. 71,916

(Tex.Crim.App., March 6, 1996 (unpublished)). Applicant's initial application for a writ of habeas corpus was denied by this Court. Ex Parte Rivera, No. 27,065-01 (Tex.Crim.App., December 16, 1998). Applicant then filed an application for a writ of habeas corpus in federal district court, and that application was denied October 3, 2001. The United States Court of Appeals for the Fifth Circuit refused to grant a certificate of appealability, and the United States Supreme Court denied *certiorari.*

Applicant has now filed a subsequent application for writ of *habeas corpus* pursuant to Article 11.071, requesting a stay and alleging among other grounds, that applicant is mentally **retarded.** [FN1]

> FN1. All other claims are barred as a subsequent petition under Art. 11.071, § 5, Tex.Code Crim. Proc.

Our *habeas corpus* statute, Article 11.071, Section 5(a), states that:
a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that ... the current claims and issues have not been and could not have been presented previously ... because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.
The legal basis for an *Atkins* claim was not available until June 20, 2002. Thus, an applicant making an *Atkins* claim *may* be entitled to have the merits of a subsequent writ application considered if his first application had been filed before the *Atkins* decision was announced.

However, under our case law, there is a second prerequisite under Section 5 before the merits of a subsequent writ can be considered. A subsequent writ must contain "sufficient specific facts" to support an applicant's *Atkins* claim. A writ application which makes the naked assertion, "I am mentally **retarded,"** or "there is a significant likelihood that [I] am mentally **retarded,"** does not suffice to leap over this second hurdle. The mere assertion of a valid legal claim, unsupported by sufficient specific factual allegations which, if true, would entitle the applicant to relief, is not enough to overcome a Section 5 bar. On the other hand, an applicant is not required to set out within his writ application the detailed facts and record evidence

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

which would prove his mental **retardation** by a preponderance of the evidence.

The Legislature steered a middle course in the plain language that it chose for Section 5: an applicant must allege "sufficient specific facts" to support his entitlement to bring a claim under newly established law within that writ application. The United States Courts of Appeals for the Fifth and Seventh Circuits have set out the *prima facie* showing necessary to permit consideration of the merits of a subsequent federal writ:

> We understand [it to] be simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.... If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or subsequent petition, we shall grant the application. [FN2]

> FN2. *Bennett v. United States,* 119 F.3d 468, 469-70 (7th Cir.1997); *Reynes-Requena v. United States,* 243 F.3d 893, 898-99 (5th Cir.2001) (quoting *Bennett* ); *see also In re Robert Charles Ladd,* No. 03-40534, slip op. at 4 (5th Cir. April 23, 2003) (unpublished); *In re Kenneth Wayne Morris,* No. 03-20373, slip op. at 2 (5th Cir. April 15, 2003) (unpublished).

**\*2** To fulfill the *prima facie* requirement for an *Atkins* claim, an applicant should provide evidence of at least one I.Q. test (preferably taken before the age of 18) from which a reasonable trier of fact could conclude that the person is mentally **retarded** under *Atkins,* [FN3] coupled with supporting school and medical records and record evidence or affidavits from qualified experts (or laymen with sufficient personal knowledge of specific conduct) that raise an issue about applicant's lack of adaptive skills and the onset of mental **retardation** before age 18.

> FN3. Of course, if the applicant or his attorney, after a diligent search, are unaware of the existence of *any* prior I.Q. testing, then other materials supporting a conclusion of "significant subaverage intellectual functioning" may suffice for a *prima facie* showing.

After a careful review of all of the materials submitted by applicant, we conclude that he has failed to meet the threshold factual burden. The evidence he has submitted to this Court includes applicant's grade reports for first through sixth grades. These records indicate that applicant was born on December 23, 1962, and began school in 1969. He earned Cs in all classes and terms except one D in one term. He repeated first grade and was placed in special classes, where he earned Cs, Bs, and one D. He also repeated fifth grade. By the time he finished sixth grade, his grades had fallen to mostly Ds and Fs in his academic subjects, including Spanish, his home language and in which he had previously earned As. He continued to earn Cs or less in academic subjects, but earned As and Bs in Mechanical Repairs. At age 17, applicant withdrew from school while in the ninth grade. He earned a GED in 1980. The evidence offered by applicant does not show the required "significantly subaverage general intellectual functioning."

Affidavits from three of applicant's sisters recount that applicant was a slow learner and apparently never learned to read well, tell time, or drive a car. Because he did not read well, applicant had difficulty in filling out job applications; his father found work for him. Applicant also forgot things and was difficult to understand when he spoke. One sister also stated that applicant began to sniff paint when he was young and continued to do so through high school. Other than allegations that he did not work much, there is no evidence of deficits in adaptive behavior.

Although applicant did not submit the results of an IQ test, we have reviewed the record from direct appeal. Included in that record are a pen packet which shows that applicant was tested and scored an IQ of 92. Also in the record from direct appeal is the affidavit of a psychiatrist who testified for the defense during the punishment phase. The affidavit indicates that the expert's evaluation of applicant in anticipation of trial was consistent with an IQ score of 92. The affidavit also opines that the recorded IQ was lowered by long-standing inhalant abuse.

Medical records for applicant indicate a head injury in 1990 and an detoxification admission to a mental-health facility in 1985. There is no mention of mental **retardation.**

A remand of a subsequent application raising an *Atkins* claim is appropriate when an applicant sets out sufficient facts to raise a *bona fide* claim of mental **retardation,** but in the instant cause

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

applicant has failed to make this threshold showing.
Because of applicant's failure to produce "sufficient
specific facts" to support an *Atkins* claim, we
dismiss applicant's subsequent writ application as an
abuse of the writ under Article 11.071, Section 5(a).

**END OF DOCUMENT**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT "C"



Cause No. _____

(The Clerk of the convicting court will fill this line.)

## COURT OF CRIMINAL APPEALS OF TEXAS

### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

Jose Alfredo Rivera _____ / /

**NAME OF APPLICANT (Please print full name)**          **DATE OF BIRTH**

Polonsky _____          999102

**PLACE OF CONFINEMENT**          **TDCJ-ID NUMBER**

**(1)** What court entered the judgment of conviction you want relief from?
(Give the number and county of the court.)

93-CR-1488 , 197TH District Court, Cameron County

**(2)** What was the cause number in the trial court? 93-CR-1488

**(3)** What was the trial judge's name? M. Lopez

**(4)** What was the date of judgment? May 13, 1994

**(5)** What was the length of sentence? Death

**(6)** Who assessed punishment? (Check one)    (a) Judge ( ); (b) Jury (✓)

**(7)** What offense or offenses were you were convicted of (all counts)?

Capital Murder.

_____

_____

1

000    1

NO. _____                     JUN 20 2003

Previous Writ No. 93-CR-1488-C
CCA Cause No. 27,065-02

| EX PARTE | § | IN THE DISTRICT COURT |
|----------|---|----------------------|
|          | § |                      |
|          | § | 197TH JUDICIAL DISTRICT |
|          | § |                      |
| JOSE ALFREDO RIVERA | § | CAMERON COUNTY, TEXAS |

## SUBSEQUENT SKELETAL APPLICATION FOR WRIT OF HABEAS CORPUS BY A PERSON SENTENCED TO DEATH[1] AND REQUEST FOR STAY

COMES NOW, JOSE ALFREDO RIVERA, Applicant in the above-styled and numbered cause, by and through his attorneys, and presents this Subsequent Skeletal Application for Writ of Habeas Corpus, pursuant to Article 11.071, Section 5(a)(1) of the Texas Code of Criminal Procedure. In support, Applicant would show the following:

## I.
## CONFINEMENT AND RESTRAINT

Applicant is unlawfully confined and restrained of his liberty by the Director of the Texas Department of Corrections, at the Livingston Unit of the Texas Department of Corrections, pursuant to a judgment of conviction of capital murder in this cause.

Jose Alfredo Rivera asks this Court to issue a writ of habeas corpus and grant him relief from his unconstitutional conviction and sentence of death. Counsel for Mr. Rivera contends that he is both factually and actually innocent, that he is also mentally retarded, that his confession was the type of confession that the United States Supreme Court worried about in *Atkins v. Virginia*, 122 S.Ct. 2242

---

[1]Due to the urgency of this filing, Rivera files this skeletal writ and reserves the right to amend his pleadings to bring to the Court's attention any new facts that are developed. Rivera will not raise any new issues or claims.

ORIGINAL 21

# EXHIBIT "D"

10:00 CLOCK ___
L. GARZA, DIST. CLERK
JUL 0 1 2003
_____ TEX.
DEPUTY

NO. _____

**Previous Writ No. 93-CR-1488-C**
**CCA Cause No. 27,065-02**

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | **197TH JUDICIAL DISTRICT** |
| | § | |
| **JOSE ALFREDO RIVERA** | § | **CAMERON COUNTY, TEXAS** |

**FIRST SUPPLEMENT TO APPLICATION FOR WRIT OF HABEAS CORPUS,**
**FILED PURSUANT TO TEX. CODE CRIM. P. 11.071(5)**
**AND REQUEST FOR STAY OF EXECUTION[1]**

COMES NOW, JOSE ALFREDO RIVERA, by and through his attorneys of record, David K. Sergi and Larry Warner, and hereby files this additional Affidavit of Dora Garza, the former wife of Jose Rivera (Exhibit A), and the Affidavit of Alma Lagarda, translator of the Affidavit of Camelia Garcia, Mr. Rivera's sister (Exhibit B), to supplement all claims previously filed by Rivera.

The following statements made by Ms. Garza in her Affidavit indicate that Mr. Rivera's adaptive behavior skills were severely limited:

¶2.     During the marriage they lived with Jose's parents. She does not remember Jose ever living on his own.

¶3.     To her knowledge, he never filled out a job application.

¶4.     His parents always paid the bills.

¶5.     He never fixed anything around the house.

¶6.     He hardly ever read any books.

_____

[1]Rivera and his counsel continue to gather factual material and affidavits. Rivera reserves the right to supplement the existing claim.

O \CLIENTS\CURRENT\Rivera, Jose\00276crim\District\mtn suppl habeas 06 24 03.wpd

1

FILED 2:30 O'CLOCK P M
AURORA DE LA GARZA, DIST. CLERK

NO. _____

Previous Writ No. 93-CR-1488-C
CCA Cause No. 27,065-02

JUL 08 2003

DISTRICT COURT CAMERON COUNTY, TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 197TH JUDICIAL DISTRICT |
| | § | |
| JOSE ALFREDO RIVERA | § | CAMERON COUNTY, TEXAS |

## PETITIONER'S SECOND SUPPLEMENT TO APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO ARTICLE 11.071(5)

COMES NOW, JOSE ALFREDO RIVERA, by and through his attorneys of record, David K. Sergi and Larry Warner, and hereby files this Second Supplement to Application for Writ of Habeas Corpus filed pursuant to Article 11.071(5).

As this Court is aware, the primary issue in this case is whether or not Mr. Rivera is factually innocent. Or, alternatively, whether he is mentally retarded pursuant to the standard enunciated by the U.S. Supreme Court in *Atkins v. Virginia*, ___ U.S. ___.

Attached hereto as Exhibits A–D are Affidavits of: A) Hugh Albright, Mr. Rivera's 6th grade teacher; B) Roberto X. Moreno, an elementary school teacher who had extensive contact with Mr. Rivera; C) Alfredo Rivera, Sr., Mr. Rivera's father; and D) Maria Juanita Rivera, youngest sister of Mr. Rivera. A review of these Affidavits, indicates that Mr. Rivera's adaptive skills were limited at best and are clear indications that Mr. Rivera is "mentally retarded" as that term is described in the DMSR-IV.

*Exhibit A:* Mr. Albright's Affidavit is particularly enlightening. Mr. Albright, who taught English, Social Studies and Science states that "[o]verall, Jose was a very poor student. He was not able to learn very much. I think that by the time he reached the 6th grade, he had reached a point where he

ORIGINAL

79

FILED 10.30 O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK

JUL 22 2003

_____ CAMERON COUNTY TEXAS
By _____ DEPUTY

NO. _____

Previous Writ No. 93-CR-1488-C
CCA Cause No. 27,065-02

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 197TH JUDICIAL DISTRICT |
| | § | |
| JOSE ALFREDO RIVERA | § | CAMERON COUNTY, TEXAS |

## PETITIONER'S THIRD SUPPLEMENT TO SUBSEQUENT APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO ARTICLE 11.071(5)

COMES NOW, JOSE ALFREDO RIVERA, by and through his attorneys of record, David K. Sergi and Larry Warner, and hereby files this Third Supplement to Subsequent Application for Writ of Habeas Corpus filed pursuant to Article 11.071(5).

Attached hereto as Exhibit A is a complete copy of Health Services Archives in Huntsville, Texas. One of the most startling discoveries in the medical record is that it appears that Mr. Rivera had a head injury in 1990. In addition, the medical records list him as an MHMR client.

Page 0005 indicates that on 4/3/92, while Mr. Rivera was serving time for parole violation, he displayed a great lack of adaptive functions because he did not know how long his sentence was and was, in fact, admitted to MHMR for 1985 for drug abuse. The head injury further appears on page 0041 of the medical records.

Also attached as Exhibit B are Mr. Rivera's medical records from when he was a patient at the Mental Health Mental Retardation facility in Harlingen, Texas. As the records relate, Mr. Rivera admitted to the use of inhalants when he was first admitted to the facility at the age of 17.

Attached as Exhibit C is a research report series on inhalant abuse from the National Institute on Drug Abuse website. The research report states the various effects of inhalant abuse, including

# SERGI & ASSOCIATES, P.L.L.C.

DAVID K. SERGI
*Licensed in Texas and California*
E-MAIL: david@sergilaw.com

P.O. BOX 1409
SAN MARCOS, TEXAS 78667
PHONE: 512/392-5010    FAX: 512/392-5042

ROBERT E. UPDEGROVE
*Licensed in Texas Only*
ERIC MOERBE, *Of Counsel*
*Licensed in Texas Only*

July 21, 2003

**RECEIVED IN**
COURT OF CRIMINAL APPEALS

**JUL 2 4 2003**

Troy C. Bennett, Jr., Clerk

Ms. Aurora de la Garza
District Clerk
Cameron County District Attorney's Office
974 E. Harrison St.
Brownsville TX 78520

      Re:    *Rivera v. Johnson*
              Previous Writ No. 93-CR-1488-C
              CCA Cause No. 27,065-02

Dear Ms. Garza:

Please find enclosed an original and two copies of our Fourth Supplement to Subsequent Application for Writ of Habeas Corpus, Pursuant to Tex. Code Crim. P. 11.071(5) and Motion for Stay. Please return a file-stamped copy in the enclosed SASE.

Thank you for your assistance in this matter.

              Yours truly,

              Viki Lankford
              Legal Assistant

Encl.

cc:    David Hartmann
       Katherine Hayes
       client

OFFICE: 109 EAST HOPKINS, SUITE 200, SAN MARCOS, TEXAS 78666

# SERGI & ASSOCIATES, P.L.L.C.

P.O. BOX 1409
SAN MARCOS, TEXAS 78667
PHONE: 512/392-5010    FAX: 512/392-5042

DAVID K. SERGI
*Licensed in Texas and California*
E-MAIL: david@sergilaw.com

ROBERT E. UPDEGROVE
*Licensed in Texas Only*
ERIC MOERBE, *Of Counsel*
*Licensed in Texas Only*

July 22, 2003

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 2 4 2003

Troy C. Bennett, Jr., Clerk

Ms. Aurora de la Garza
District Clerk
Cameron County District Attorney's Office
974 E. Harrison St.
Brownsville TX 78520

Re:    *Rivera v. Johnson*
       Previous Writ No. 93-CR-1488-C
       CCA Cause No. 27,065-02

Dear Ms. Garza:

Please find enclosed an original and two copies of our Fifth Supplement to Subsequent Application for Writ of Habeas Corpus, Pursuant to Tex. Code Crim. P. 11.071(5). Please return a file-stamped copy in the enclosed SASE.

Thank you for your assistance in this matter.

Yours truly,

Viki Lankford
Legal Assistant

Encl.

cc:    David Hartmann
       Katherine Hayes
       client

# EXHIBIT "E"

IN THE 197TH JUDICIAL DISTRICT COURT
OF CAMERON COUNTY, TEXAS
AND
IN THE COURT OF CRIMINAL APPEALS OF TEXAS
IN AUSTIN, TEXAS

**ORIGINAL**

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 0 1 2003

Troy C. Bennett, Jr., Clerk

|  |  |
|---|---|
| EX JOSE ALFREDO RIVERA, | ) |
|  | ) |
|  | ) |
|  | ) **CAUSE NO. 27,065-02** |
|  | ) |
| APPLICANT | ) |
|  | ) |
|  | ) |

**SUGGESTION FOR REHEARING OF POSTCONVICTION WRIT OF
HABEAS CORPUS AND MOTION FOR STAY OF EXECUTION**

**JOSE ALFREDO RIVERA IS SCHEDULED TO BE EXECUTED
AT 6 P.M. ON WEDNESDAY, AUGUST 6, 2003.**

# EXHIBIT "F"



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. 27,065-02

### EX PARTE JOSE ALFREDO RIVERA

## HABEAS CORPUS APPLICATION
## FROM CAMERON COUNTY

*Per Curiam.  Price, J., would grant and remand to the trial court. Keller, P.J., and Womack, J., not participating.*

## O R D E R

On July 25, 2003, this Court dismissed this subsequent application for writ of habeas corpus filed pursuant to the provisions of Art. 11.071, Sec. 5, V.A.C.C.P.  The application presented a claim of mental retardation under <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002). Dismissal was appropriate because applicant failed to produce sufficient specific facts to support his <u>Atkins</u> claim.  Ex parte Rivera, Writ No. 27,065-02 (Tex. Crim. App. July 25, 2003).

Rivera   -2-

Applicant has now filed a "Suggestion for Rehearing of Post Conviction Writ of Habeas Corpus and Motion for Stay of Execution" from our order of July 25, 2003.  Such a pleading is not authorized under Tex. R. App. P. 79.2(d).  Moreover, upon due consideration, we decline to reconsider the matter on our own initiative.

IT IS SO ORDERED THIS THE 5TH DAY OF AUGUST, 2003

DO NOT PUBLISH

# EXHIBIT "G"

IN THE 197ᵀᴴ JUDICIAL DISTRICT COURT
OF CAMERON COUNTY, TEXAS
AND
IN THE COURT OF CRIMINAL APPEALS OF TEXAS
IN AUSTIN, TEXAS

_____

EX  JOSE ALFREDO RIVERA,

*Applicant*                        CAUSE No. 27,065-03

_____

*Rec'd*
*6:25 pm*
*8.6.03*
*Tex Cr. App*
*RSW*

SUCCESSOR APPLICATION FOR A WRIT OF HABEAS CORPUS AND
STAY OF EXECUTION

THIS IS A DEATH PENALTY CASE

*MR. RIVERA'S EXECUTION IS SCHEDULED FOR*
*6:00 P.M., August 6, 2003*

TEXAS DEFENDER SERVICE
510 S. Congress, Suite 307
Austin, Texas 78704
(512)320-8300

SERGI & ASSOCIATES, P.L.L.C.
109 E. Hopkins, Suite 200
San Marcos, Texas 78666

# EXHIBIT "H"



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. 27,065-03

### EX PARTE JOSE ALFREDO RIVERA

## HABEAS CORPUS APPLICATION FROM CAMERON COUNTY

*Per Curiam. Price, J., would grant and remand to the trial court. Keller, P.J., and Womack, J., not participating.*

## O R D E R

In 1994 applicant was convicted of the offense of capital murder and assessed the death penalty. The conviction was affirmed on direct appeal. Rivera v. State, No. 71,916 (Tex. Crim. App., March 6, 1996). The trial court scheduled applicant's execution to take place today.

We denied applicant's initial application for habeas corpus relief. Ex parte Rivera, Writ No. 27,065-01 (Tex. Crim. App., December 16,

RIVERA -2-

1998).

On July 25, 2003, we dismissed applicant's first subsequent application for writ of habeas corpus filed pursuant to the provisions of Art. 11.071, Sec. 5, V.A.C.C.P.  The application presented a claim of mental retardation under Atkins v. Virginia, 536 U.S. 304 (2002). Dismissal was appropriate because applicant failed to produce sufficient specific facts to support his Atkins claim.  In reaching our decision, we relied on the material submitted by applicant in his application and the record on direct appeal.  Ex parte Rivera, Writ No. 27,065-02 (Tex. Crim. App. July 25, 2003).

On August 4, 2003, applicant sought reconsideration of the July 25, 2003, dismissal by way of a "Suggestion for Rehearing of Post Conviction Writ of Habeas Corpus and Motion for a Stay of Execution."  The request was accompanied with documents presented for the first time in the "Suggestion."  The motion was not authorized under Tex. R. App. P. 79.2(d).  Further, upon due consideration of the material submitted and arguments made in support of the "Suggestion,"  we declined to reconsider the matter on our own initiative on August 5, 2003.

On this the eve of his scheduled execution, applicant has now filed a second subsequent application seeking habeas corpus relief on the basis he is retarded.  The subsequent application relies on the

RIVERA -3-

material previously submitted in support of the "Suggestion for Rehearing." We have considered that material, the material previously submitted in support of the first subsequent application, the record on direct appeal and find applicant has failed to set out sufficient facts to raise a bona fide claim of mental retardation.

We decline to consider the newly presented material in support of the second subsequent application in isolation. An applicant may not and should not selectively dole out his evidence, bit by bit, in an effort to ultimately find a court in which he may succeed. Accordingly, we dismiss the application as an abuse of the writ under Art. 11.071, Sec. 5(a), and deny the request for a stay of execution.

IT IS SO ORDERED THIS THE 6TH DAY OF AUGUST, 2003

DO NOT PUBLISH

# EXHIBIT "I"

EXECUTIVE DIRECTOR
JIM MARCUS

TRIAL PROJECT DIRECTOR
JOHN P. NILAND

STAFF ATTORNEYS
BRYCE BENJET
KATHRYN M. KASE
ANDREA KEILEN
MORRIS MOON
NAOMI TERR

OFFICE ADMINISTRATOR
ARACELI G. SEPULVEDA

PARALEGALS
KIM BARKER

BOARD OF DIRECTORS

MIKE CHARLTON, CHAIRMAN
JOHN E. ACKERMAN
STEPHEN B. BRIGHT
RICHARD BURR
DAVID R. DOW
EDEN E. HARRINGTON
JAN E. HEMPHILL
MAURIE A. LEVIN
ROBERT MORROW
ROBERT C. OWEN
PROF. JEFF POKORAK
DOUGLAS ROBINSON
RAOUL SCHONEMANN
ELISABETH SEMEL
PROF. JORDAN STEIKER
MANDY WELCH

# TEXAS DEFENDER SERVICE

412 MAIN, SUITE 1150, HOUSTON, TEXAS 77002
VOICE: (713) 222-7788 | FAX: (713) 222-0260
www.texasdefender.org

August 9, 2003

**RECEIVED**

AUG 1 1 2003
POSTCONVICTION LITIGATION
DIVISION

Mr. Juan Barbosa
Deputy-in-Charge
U.S. District Court for the Southern District of Texas
Brownsville Division
1158 Federal Bldg.
600 E. Harrison St
Brownsville, Texas 78520-7114
(956) 548-2500

Re: *Jose Alfredo Rivera v. Cockrell.*

Dear Mr. Barbosa:

Enclosed please find an original and two copies of Mr. Rivera's Application for a Writ of Habeas Corpus. Please filed stamp the extra copy and return it to me in the enclosed pre-paid mailer.

By copy of this letter, I have served counsel for Respondent Cockrell with a copy of the enclosed application. Thank you very much for your assistance in this matter.

Sincerely,

Jim Marcus

cc:   Ms. Katherine Hayes, Assistant Attorney General

enclosures:

AUSTIN OFFICE: 510 S. CONGRESS, SUITE 307, AUSTIN, TEXAS 78704
VOICE: (512) 320-8300 | FAX: (512) 477-2153