IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA, | § § § | |
| Petitioner, | § § § | |
| V. | § § | NO. B-03-139 |
| DOUG DRETKE, Director, Texas Department of Criminal Justice, Institutional Division, | § § § § § | |
| Respondent. | § | |

### PETITIONER JOSE ALFREDO RIVERA'S REPLY TO RESPONDENT'S POST-HEARING BRIEF

OF COUNSEL:
William E. Lawler III
Southern District Bar No. LA29514
Walter M. Berger
Southern District Bar No. 21834
Texas State Bar No. 00798063
Emily W. Pipkin
Southern District Bar No. 35260
Texas State Bar No. 24037284
Vinson & Elkins L.L.P.
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Phone: 713-758-2222
Fax:     713-615-5258

Max Hendrick, III
Attorney-in-Charge
Southern District Bar No. 0518
Texas State Bar No. 09450000
Vinson & Elkins L.L.P.
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Phone: 713-758-2546
Fax:     713-615-5251

ATTORNEYS FOR PETITIONER
JOSE ALFREDO RIVERA

Petitioner has demonstrated, both at the January hearing and in his Post-Hearing Brief, that he is entitled to relief under *Atkins v. Virginia* because he is mentally retarded. *See*, 536 U.S. 304 (2002). Mr. Rivera has demonstrated: 1) he has significant limitations in intellectual functioning; 2) he has significant limitations in adaptive functioning; and 3) he manifested these deficits before the age of 18. Respondent's Post-Hearing Brief does not alter this showing.

## I. MR. RIVERA HAS SIGNIFICANT DEFICITS IN INTELLECTUAL FUNCTIONING

### A. Leading Authorities Have Rejected Respondent's Position that Half of Mr. Rivera's Full Scale IQ Score Should Be Disregarded.

The government has suggested, without providing any valid literature or reliable data, that the Court should ignore Mr. Rivera's verbal IQ score on the WAIS-III test because he is a native Spanish speaker. T-III at 355-359.[1] The Court should reject the government's position not only because in practice it would lead to the absurd conclusion that no native Spanish speaker can be adequately tested for deficits in intellectual functioning,[2] but also because leading authorities on interpretation of the WAIS-III have conclusively rejected this position. The writers of CLINICAL INTERPRETATION OF THE WAIS-III AND WMS III recognize that where there is a fifteen point difference or greater between the verbal IQ score ("VIQ") and the performance IQ score ("PIQ"), some sources recommend disregarding the lower of the VIQ and PIQ; they conclude that, even with this disparity, this practice is not recommended:

> Some sources recommend prorating composite scores by eliminating low subtest scores, or using the higher of two IQ's (VIQ or PIQ) when the scale scores differ by 15 points or more . . . . This practice is questionable on conceptual grounds because it is a post hoc procedure . . . . IQ is supposed to measure the global, comprehensive construct of intelligence, not just one sub-piece or construct . . . .

CLINICAL INTERPRETATION OF THE WAIS-III AND WMS-III 492-494 (2003). It is critical that it is only clinically possible to disregard the lower score when the disparity is 15 points or higher.

---

[1] T-II and T-III will be used to refer to Vol. II and Vol. III of the Transcript from the January 7-8, 2004 hearing.
[2] Actually, Respondent's position leads to the result that no native Spanish speaker outside Puerto Rico could be tested adequately because a standardized test exists for native Spanish speakers from Puerto Rico. T-III at 367.

*Id.* In Mr. Rivera's case, the difference is only 11 points,[3] which forecloses the argument to disregard his VIQ score.

### B. Respondent Has Taken the Evidence It Presents in Support of Disregarding the VIQ Score out of Context.

The only support Respondent offers to support its position that Mr. Rivera's VIQ should be disregarded has been taken out of context in an attempt to convince the Court to adopt an unsupportable position. Respondent states that "in certain instances an examiner may consider placing 'greater weight' on the either verbal or performative subtests and scores as estimates of an examinee's cognitive abilities." RB at 4.[4] Respondent suggests by way of this quote that the WAIS-III ADMINISTRATION AND SCORING MANUAL ("WAIS-III MANUAL") endorses disregarding the VIQ in a situation such as Mr. Rivera's. *Id.* In fact, the WAIS-III MANUAL limits this weighing of scores to specific situations: "physical impairment," "motor or visual impairment," "hearing impairments or speech disability." WAIS-III MANUAL 33 (1997). The full sentence Respondent quoted actually reads: "Similarly [to the situations listed above], for an examinee with a hearing impairment or speech disability, you may find it preferable to place greater weight on the Performance subtests and scores as estimates of the examinee's cognitive abilities." *Id.* Nothing in this quote suggests that the VIQ should be disregarded.[5] Moreover, if given the full quote in context, it is evident that the weighing of scores is not appropriate in Mr. Rivera's situation. Mr. Rivera does not have a physical, motor, visual, hearing, or speech impairment, nor any like impairment. The examiner, Dr. Kessner, was convinced that Mr. Rivera was communicating well and following test instructions.[6] PX 2 at 1.

---

[3] Mr. Rivera scored a 66 on the VIQ and a 77 on the PIQ. PX 2 at 3 (PX will refer to Petitioner's Exhibits).
[4] RB and PB will refer to the Respondent's and Petitioner's Post-Hearing Briefs respectively.
[5] Even if it were an accepted practice to disregard VIQ in this scenario, Dr. Saunders bases his conclusions on not a "test," but an off-the-cuff vocabulary exercise of nine Spanish words. *See* T-III at 359, 391; RB at 3.
[6] Dr. Kessner confirmed this in her testimony. (Transcript Vol. 1, which contains all of Dr. Kessner's testimony, is still not available as of the date of this filing, so there is no cite available).

### C. Respondent's Arguments on Mr. Rivera's Intellectual and Adaptive Functioning Are Inherently Inconsistent as to Mr. Rivera's English Language Capability.

On one hand, Respondent argues that Mr. Rivera's VIQ should be disregarded because he is deficient in English. On the other hand, Respondent's proof as to Mr. Rivera's adaptive functioning relied on his ability to communicate and read in English. Respondent's witnesses testified that Mr. Rivera could follow orders and communicate with prison guards in English, *see, e.g.,* T-II at 279, 285, 315, that he has read several lower-level English language books, *see* T-III at 263, and that he has even taken correspondence Bible courses in English, *see* T-III, at 211; RX 8-9. TDCJ records even list Mr. Rivera's primary language as English, *see id.,* at 318. Respondent's own proof on Mr. Rivera's adaptive functioning belies its argument that Mr. Rivera's VIQ score should be disregarded because of his English language deficiency.

Therefore, the Court should focus on the results of the one valid, "gold standard" test that has been given: the WAIS-III full scale. Mr. Rivera's full scale IQ is a 68,[7] which is within the lowest two perfect of the population for purposes of diagnosing mental retardation. It is this test that has been carefully standardized through research performed over the years by experts who have taken into account multiple demographic variables, including race, ethnicity, and educational level. *See* WAIS-III and WMS-III TECHNICAL MANUAL at 11, 21, 36, 39 (2002).

## II. MR. RIVERA HAS SIGNIFICANT DEFICITS IN ADAPTIVE FUNCTIONING

Mr. Rivera meets this second requirement for mental retardation because he has significant adaptive skills deficits. Even the government's expert acknowledged, "There are adaptive deficits here . . . I'm not saying that [Mr. Rivera] does not have adaptive functioning deficits." T-III. at 420:20-25. Dr. Garnett confirmed the evidence of limitations in Mr. Rivera's adaptive functioning from childhood to present. PX 24 at 2, 9-10. Although Mr. Rivera need

---

[7] Respondent's Brief still references two other IQ scores that both experts agree that only the full-scale WAIS-III can be used for purposes of making a mental retardation diagnosis. T-II at 119; Tr-III at 327-328.

only show adaptive deficits in two of the ten categories adopted in *Atkins*, he has shown deficits in the majority of these categories. *See Atkins*, 536 U.S. 304. At a minimum, he has irrefutably shown that he was deficient before age 18 in functional academics and self-care. *See* PB at 5-8.

The only attempts to rebut this evidence are not made with contradictory testimony, but with suppositions, possibilities, and other hypotheticals offered by the Respondent in an attempt to confuse the issues at hand.[8] Respondent spends the better part of pages six through nine of their brief discussing various unsubstantiated reasons that Mr. Rivera's deficits were not caused by his mental retardation, but by other "possible" causes. *See* RB at 6-9. Respondent's discussion of these issues is totally irrelevant for two reasons. First, the Court does not need to determine *how* Mr. Rivera came to have adaptive deficits, but *whether* he had them before age 18. It is the *fact that he has adaptive deficits alone* that makes him mentally retarded. Furthermore, it does not matter whether the deficits were caused by Mr. Rivera's mental retardation or his "own volitional behavior."[9] *Id.* at 9. All that matters for purposes of a mental retardation diagnosis is that Mr. Rivera has exhibited these deficits in at least two of the relevant categories. The authoritative literature makes clear, "Measures of adaptive behavior are usually ratings of typical performance, or how the individual typically behaves, rather than the ability to perform some task." WISC-III CLINICAL USE AND INTERPRETATION 75 (1998). The focus is on *how* the individual actually behaves, not on whether he could have behaved differently. Second,

---

[8] Respondent also confuses the substance of Dr. Garnett's testimony. Despite what Respondent's Brief says, Dr. Garnett only agreed that, "generally," "most" mentally retarded people do not commit certain types of bad acts, just as non-mentally retarded generally do not do them. *See* T-II at 150-153. The fact that Mr. Rivera may or may not have committed some of these bad acts does not mean that he is not mentally retarded. Respondent also takes Mr. Rivera's sister's testimony out of context in a way that is misleading. *See* RX at 9. Respondent claims that it is "most damning" that his sister thought he had changed once he was older and married. *Id.* What Respondent neglects to tell the Court is that his sister explained that had not seen him in years because she was in Florida; she could not have known whether he was now more "normal." T-II at 36. Moreover, this testimony discusses Mr. Rivera's adaptive deficits *after he was eighteen*, and therefore is not relevant to a mental retardation diagnosis.

[9] The fact that Mr. Rivera's mental retardation may have been caused by his own substance abuse or any other volitional acts does not effect the mental retardation diagnosis. *See* PX 28 (The Texas Department of Mental Health and Mental Retardation names substance abuse, a volitional act, as the most common cause of mental retardation).

4

the fact that Respondent has randomly thrown out other possible causes for Mr. Rivera's deficits without offering any support for them shows that Respondent's evidence does not rebut the substantial proof that Petitioner has made of his adaptive deficits. For these reasons, the Court should not be distracted by Respondent's attempts to distract the Court from the true issue at hand: whether Mr. Rivera had adaptive deficits in two areas before the age of eighteen.

### III. MR. RIVERA EXHIBITED INTELLECTUAL AND ADAPTIVE DEFICITS BEFORE THE AGE OF 18.

Respondent has not even attempted to rebut the substantial evidence offered by Petitioner regarding his intellectual, conceptual, social, and practical deficits before the age of 18. All evidence offered by the Respondent points to Mr. Rivera's deficits after the age of 18, when he is in the atypical, repetitious, controlled environment on death row. As shown by the substantial evidence, including the testimony of several witnesses and Mr. Rivera's academic records, Mr. Rivera had significant limitations in intellectual and adaptive functioning well before the age of 18. For example, Mr. Rivera's sixth grade teacher stated: "One of the reasons I remember so much about [Mr. Rivera] in particular is that in all the 21 years that I was at Longoria, there was nothing—nothing ever that could match, in my judgment, his failure, his inability to perform such simple tasks. I never did see that in another kid." T-II at 87. This is a clear example of Mr. Rivera's deficit in functional academics before age 18. An example provided by Mr. Rivera's sister is the fact that his family nickname is "cochinito" or "little pig" because he could not take care of himself and was perpetually dirty; he did not bathe, wash his hair, teeth, or clothes, or even sleep indoors. T-II at 6-8, 11-12, 28. Therefore, without a valid rebuttal by Respondent, Petitioner has necessarily proven that Mr. Rivera's deficits manifested themselves before age 18.

WHEREFORE, Petitioner respectfully requests that this Court grant him relief from his unconstitutional sentence of death and grant such other relief as law and justice require.

5

                Respectfully submitted,

*[signature]*

Max Hendrick, III
Attorney-in-Charge
Southern District Bar No. 0518
Texas State Bar No. 09450000
Vinson & Elkins L.L.P.
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Phone: 713-758-2546
Fax:   713-615-5251

OF COUNSEL:

William E. Lawler III
Southern District Bar No. LA29514
Walter M. Berger
Southern District Bar No. 21834
Texas State Bar No. 00798063
Emily W. Pipkin
Southern District Bar No. 35260
Texas State Bar No. 24037284
Vinson & Elkins L.L.P.
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Phone: 713-758-2222
Fax:   713-615-5258

**ATTORNEYS FOR PETITIONER
JOSE ALFREDO RIVERA**

## CERTIFICATE OF SERVICE

I hereby certify that on February 12Th, 2004, a copy of this motion was served on the Respondent via facsimile at the following address:

Katherine D. Hayes
Assistant Attorney General
Postconviction Litigation Division
209 West 14th St., 8th Floor
Austin, Texas 78701

_____
Emily W. Pipkin

2