

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. 27,065-02

### EX PARTE JOSE ALFREDO RIVERA, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM CAMERON COUNTY

*Per curiam.*

### ORDER

Applicant was convicted of capital murder and assessed the death penalty in 1994. This Court affirmed the conviction. *Rivera v. State*, No. 71,916 (Tex. Crim. App., March 6, 1996 (unpublished)). Applicant's initial application for a writ of *habeas corpus* was denied by this Court. *Ex Parte Rivera*, No. 27,065-01 (Tex. Crim. App., December 16, 1998). Applicant then filed an application for a writ of *habeas corpus* in federal district court, and that application was denied October 3, 2001. The United States Court of Appeals for the Fifth Circuit refused to grant a certificate of appealability, and the United States Supreme Court denied *certiorari*.



EXHIBIT B

2

Applicant has now filed a subsequent application for writ of *habeas corpus* pursuant to Article 11.071, requesting a stay and alleging among other grounds, that applicant is mentally retarded.[1]

Our *habeas corpus* statute, Article 11.071, Section 5(a), states that:

> a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that . . . the current claims and issues have not been and could not have been presented previously . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

The legal basis for an *Atkins* claim was not available until June 20, 2002. Thus, an applicant making an *Atkins* claim *may* be entitled to have the merits of a subsequent writ application considered if his first application had been filed before the *Atkins* decision was announced.

However, under our case law, there is a second prerequisite under Section 5 before the merits of a subsequent writ can be considered. A subsequent writ must contain "sufficient specific facts" to support an applicant's *Atkins* claim. A writ application which makes the naked assertion, "I am mentally retarded," or "there is a significant likelihood that [I] am mentally retarded," does not suffice to leap over this second hurdle. The mere assertion of a valid legal claim, unsupported by sufficient specific factual allegations which, if true, would entitle the applicant to relief, is not enough to overcome a Section 5 bar. On the other hand, an applicant is not required to set out within his writ application the detailed facts and record evidence which would prove his mental retardation by a preponderance of the evidence.

The Legislature steered a middle course in the plain language that it chose for Section 5: an applicant must allege "sufficient specific facts" to support his entitlement to bring a claim under newly established law within that writ application. The United States Courts of Appeals for the Fifth and Seventh Circuits have set out the *prima facie* showing necessary to permit consideration of the merits of a subsequent federal writ:

> We understand [it to] be simply a sufficient showing of possible merit to warrant a fuller exploration by the district court . . . . If in light of the documents submitted with

---

[1] All other claims are barred as a subsequent petition under Art. 11.071, §5, Tex. Code Crim. Proc.

3

the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or subsequent petition, we shall grant the application.[2]

To fulfill the *prima facie* requirement for an *Atkins* claim, an applicant should provide evidence of at least one I.Q. test (preferably taken before the age of 18) from which a reasonable trier of fact could conclude that the person is mentally retarded under *Atkins*,[3] coupled with supporting school and medical records and record evidence or affidavits from qualified experts (or laymen with sufficient personal knowledge of specific conduct) that raise an issue about applicant's lack of adaptive skills and the onset of mental retardation before age 18.

After a careful review of all of the materials submitted by applicant, we conclude that he has failed to meet the threshold factual burden. The evidence he has submitted to this Court includes applicant's grade reports for first through sixth grades. These records indicate that applicant was born on December 23, 1962, and began school in 1969. He earned Cs in all classes and terms except one D in one term. He repeated first grade and was placed in special classes, where he earned Cs, Bs, and one D. He also repeated fifth grade. By the time he finished sixth grade, his grades had fallen to mostly Ds and Fs in his academic subjects, including Spanish, his home language and in which he had previously earned As. He continued to earn Cs or less in academic subjects, but earned As and Bs in Mechanical Repairs. At age 17, applicant withdrew from school while in the ninth grade. He earned a GED in 1980. The evidence offered by applicant does not show the required "significantly subaverage general intellectual functioning."

Affidavits from three of applicant's sisters recount that applicant was a slow learner and apparently never learned to read well, tell time, or drive a car. Because he did not read well, applicant

---

[2] *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997); *Reynes-Requena v. United States*, 243 F.3d 893, 898-99 (5th Cir. 2001) (quoting *Bennett*); *see also In re Robert Charles Ladd*, No. 03-40534, slip op. at 4 (5th Cir. April 23, 2003) (unpublished); *In re Kenneth Wayne Morris*, No. 03-20373, slip op. at 2 (5th Cir. April 15, 2003) (unpublished).

[3] Of course, if the applicant or his attorney, after a diligent search, are unaware of the existence of *any* prior I.Q. testing, then other materials supporting a conclusion of "significant subaverage intellectual functioning" may suffice for a *prima facie* showing.

4

had difficulty in filling out job applications; his father found work for him. Applicant also forgot things and was difficult to understand when he spoke. One sister also stated that applicant began to sniff paint when he was young and continued to do so through high school. Other than allegations that he did not work much, there is no evidence of deficits in adaptive behavior.

Although applicant did not submit the results of an IQ test, we have reviewed the record from direct appeal. Included in that record are a pen packet which shows that applicant was tested and scored an IQ of 92. Also in the record from direct appeal is the affidavit of a psychiatrist who testified for the defense during the punishment phase. The affidavit indicates that the expert's evaluation of applicant in anticipation of trial was consistent with an IQ score of 92. The affidavit also opines that the recorded IQ was lowered by long-standing inhalant abuse.

Medical records for applicant indicate a head injury in 1990 and an detoxification admission to a mental-health facility in 1985. There is no mention of mental retardation.

A remand of a subsequent application raising an *Atkins* claim is appropriate when an applicant sets out sufficient facts to raise a *bona fide* claim of mental retardation, but in the instant cause applicant has failed to make this threshold showing. Because of applicant's failure to produce "sufficient specific facts" to support an *Atkins* claim, we dismiss applicant's subsequent writ application as an abuse of the writ under Article 11.071, Section 5(a).

En banc
Filed: July 25, 2003
Do Not Publish