IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA,<br>Petitioner, | § § § | |
| v. | § § | CIVIL ACTION NO. 1:03-cv-00139<br>**CAPITAL LITIGANT** |
| DOUG DRETKE, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>Respondent. | § § § § § | |

### AFFIDAVIT OF STEPHEN R. GILLILAND, M.S LPC

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF WALKER | § |

BEFORE ME, the undersigned authority on this date, personally appeared Stephen Gilliland, who having been duly sworn, deposed and stated as follows:

1. My name is Stephen Gilliland. I am a Licensed Professional Counselor. I worked for the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for twenty-two years. Eight years ago, I began working for the University of Texas Medical Branch (UTMB), and my official title is "Responsible Psycho-therapist." Currently, I am the Supervisor for Mental Health and Psychological Services at TDCJ's Holliday Unit and I have held this position for almost eight years.

2. I have personal knowledge that the statements contained in this affidavit are true and correct. I am of sound mind and am fully competent to testify to the matters stated in this affidavit. I have not been threatened, nor have I been given anything in exchange for making this affidavit.

3. Between 1993 and 1997, I worked as an Associate Clinical Psychologist IV at TDCJ's Ellis I Unit. Part of my responsibilities included conducting initial


EXHIBIT G

4.     death row intake assessments, and I have probably conducted over 250 such assessments. I also conducted numerous intake assessments for general population inmates as well.

4. I hereby certify that I have reviewed the following documents regarding death row inmate Jose Alfredo Rivera, DR # 999102: (1) two pages of clinic notes, and (2) one page marked "Initial Patient Data Form". Copies of these documents are attached to this affidavit.

5. The records attached were completed by me when I conducted an initial death row assessment of offender Rivera on June 6, 1994. I verify that is my handwriting on page MED-00254, and the same for the upper portion of page MED-00253 (ending with my signature). It is also my handwriting and signature on the page labeled MED-00255.

6. In June 1994, generally all death row inmates were screened at the unit of confinement (the Ellis I Unit) in three special needs areas: (1) adaptive skills were assessed by clinical interview; (2) IQ was assessed either by completion of high school or by administration of the WAIS-R short form; and (3) mental illness was assessed by clinical interview and utilization of the multi-axis approach from the DSM-IV.

7. This screening process was initiated on death row after the *Ruiz* case in the early 1980's. The purpose of the screening is to identify special needs inmates and inmates with psychiatric needs, and to determine the appropriate level of assistance these inmates might need (for example, special assistance in filing inmate requests or grievances or representation at disciplinary proceedings).

8. If a death row inmate completed high school, then no IQ testing was utilized. However, if an inmate did not complete high school, then IQ was assessed by administering a WAIS-R short form which was always comprised of the Vocabulary and Block Design sub-tests.

9. If the inmate scored 70 or below on the WAIS-R short form with confirmed adaptability deficits, then he would be automatically referred for Mentally Retarded Offender Program (MROP) state approved Diagnostic and Evaluation (D&E) team evaluation for mental retardation.

10. In an inmate's IQ was scored between 71-75, other methods were employed such as administering the entire WAIS-R, using the Test Of Non-verbal

Page 2 of 3

Intelligence (TONI) or the Culture Fair Test, and assessing adaptive behavior more closely.

11. If an inmate's IQ was scored above 75 on the WAIS-R, then no further IQ testing was conducted unless adaptability issues exist. Then it is the clinician's judgment call whether an additional test or evaluation is required.

12. While I do not personally remember inmate Rivera, I have reviewed the attached records regarding his initial intake assessment. The page labeled MED-00254 states "He was given a WAIS-R short form and obtained F/S [full scale IQ] of 80." Because I completed this record, I can guarantee that I administered Rivera the Verbal and Block Design sub-tests of the WAIS-R, that I scored the sub-tests, and that I calculated his full scale IQ to be 80.

13. If Spanish had been this inmate's first and primary language and English his second, and yet he still obtained a full scale IQ score of 80 on the WAIS-R, I am all the more confident that this inmate could not be mentally retarded.

14. I am also confident that no mentally retarded inmate made it through the screening process unrecognized. No one would have "fallen through the cracks."

15. All testing records, raw data, and answer forms from the Ellis I Unit were destroyed before death row was moved to the Terrell Unit (what is now called the Polunsky Unit). Therefore, no documents exist other than my clinic notes regarding Rivera's 1994 WAIS-R short form full scale IQ score of 80.

FURTHER AFFIANT SAYETH NOT.

*signature*

STEPHEN GILLILAND

Sworn to and subscribed before me on this __15__ day of April, 2005.

*signature*

Notary Public, State of Texas
My Commission Expires:

Page 3 of 3

Evelyn J. Jolly
Notary Public, State of Texas
My Commission Expires
09/16/2008
Notary without Bond

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

Name: Rivera, Jose Alfredo
DCJ No.: 999102
Unit: Ellis I (D/R)

| Date & Time | Notes |
|---|---|
| 6 Jun 94<br>1010 | INITIAL Death-Row Assessment<br><br>I. SUBJECTIVE:<br>This newly arrived D/R inmate was seen for initial assessment processing. The admitting nature of the process was explained to Pt. He agreed to participate in the evaluation process. He was transported from Cameron County (Brownsville) Texas. He reported [illegible] to jail while he [illegible] out [illegible] him [illegible] to get [illegible]. Chronic history of polydrug abuse + tobacco. He has been "huffing" [illegible] of petroleum products for 15 yrs. No [illegible] disturbance [illegible] reported lately.<br><br>II. OBJECTIVE:<br>32 y.o. AA H/M who is adequately developed + [illegible] [illegible], who [illegible] [illegible] [illegible]. He is [illegible], [illegible] and good-oriented. He has [illegible] on W.A.I.S.-A [illegible] from [illegible] at D F/S of 80. He is well oriented [illegible] [illegible] good [illegible]. He has H/V/O [illegible] [illegible] [illegible] [illegible] [illegible] [illegible]. He [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible]. His [illegible] and [illegible] the [illegible] of [illegible] to [illegible] [illegible] [illegible].<br><br>III. ASSESSMENT:<br>- Rev. I: Polydrug Abuse + Dependence<br>- [illegible] |

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

Name: Rivera, Jose [illegible]
TDCJ No.: 589102
Unit: Ellis I (o/c)

| Date & Time | Notes |
|---|---|
| 5 JUN 94 (cont) | Axis III: Back problems + Hypertension<br>IV. Recommendations/Plan:<br>① IPOB completed & signed<br>② No ψ service necessary at this time<br>③ S/AP P&N s/c follow-up<br>④ Intake [illegible] w/o [illegible]<br>[signature] |
| 4/4/96 0940 | [illegible] |
| 5/30/97 0700 | Referral from medical.<br>Reason: Requesting to see psych for<br>Classification DBCC Screening<br>Plan: Appt. 6/2/97 [signature] Brenda Dampier CM mgr |
| 6/2/97 0800 | Pt. seen this date and cleared psychologically<br>for work capable programs. [illegible]<br>Brenda Dampier CM mgr; C. Coeling RN |
| 08/03/97 0810 | SCR: "Need to know the name of that person which I saw when I went to that sight, on any other person that looks at this office"<br>Response: "You saw several different people on your last two separate occasions. One the initial D/L [illegible] has [illegible] to hear for w/s screening [illegible]. What is it that you are requesting?" [signature] |

MED-00253

TEXAS DEPARTMENT CRIMINAL JUSTICE
INSTITUTIONAL DIVISION

NAME: Rus, Jose B.    TDCJID #: 999102

PSYCHIATRIC SERVICES
INITIAL PATIENT DATA FORM

UNIT: Ellis I (O/R)
DATE: 6 JUN 94

SEX: m/m    AGE: 32/1994  12/23/62    PRIOR INCARCERATIONS: x2

1. PRESENTING COMPLAINT: Initial O/R Routine Assessment

2. WHAT ARE THE MAIN MEDICAL PROBLEMS YOU HAVE IN YOUR LIFE?
   Chronic Back Pains & Depression

3. ARE YOU TAKING ANY MEDICATIONS?    YES ___ NO [X]
   IF SO, WHICH ONES? N/A

4. HAVE YOU EVER CUT YOUR WRISTS OR DELIBERATELY HURT YOURSELF IN ANY WAY?    YES ___ NO [X]

5. HAVE YOU EVER SERIOUSLY THOUGHT OF KILLING YOURSELF?    YES ___ NO [X]

6. HAVE YOU EVER BEEN TREATED FOR DRUG OR ALCOHOL PROBLEMS?    YES [X] NO ___
   Camera County Mhmr '84

7. DO YOU BELIEVE YOU HAVE A DRUG OR ALCOHOL PROBLEM?    YES [X] NO ___
   Inquiry for 10 yrs - Thinner & Permanent Gromicks

8. HAVE YOU EVER HEARD VOICES OR SEEN THINGS THAT OTHER PEOPLE CANNOT HEAR OR SEE?    YES ___ NO [X]

9. HAVE YOU EVER RECEIVED PSYCHIATRIC TREATMENT?    YES ___ NO [X]

10. HAVE YOU EVER BEEN PLACED IN A PSYCHIATRIC HOSPITAL AGAINST YOUR WILL?    YES ___ NO [X]

11. NOTES: Check System Abuse

_____
SIGNATURE

HSP-30 (Rev. 5/93)

MED-00255