IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-41065

U. S. COURT OF APPEALS
FILED
AUG 6 2003
CHARLES R. FULBRUGE III
CLERK

IN RE: JOSE ALFREDO RIVERA,

Movant.

Motion for an order authorizing the
United States District Court for the Southern
District of Texas, Brownsville Division, to consider
a successive habeas 28 U.S.C. § 2254 application

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

I

Jose Alfredo Rivera seeks leave to file a successive petition for writ of habeas corpus and a stay of execution. Rivera was convicted and sentenced to death for murdering a child during an aggravated sexual assault. Nine years ago the Texas Court of Criminal Appeals affirmed the judgment and sentence and Rivera did not seek certiorari review. Rivera filed a state habeas petition on December 8, 1997. On December 16, 1998, the Court of Criminal Appeals adopted the findings of the habeas court and denied the

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

petition. Rivera's federal habeas petition followed in July 1999, asserting some twenty-four grounds for relief. We denied a certificate of appealability on all claims in a per curiam filed November 27, 2002. Rivera's subsequent state writ has been denied by the Texas Court of Criminal Appeals which yesterday refused to reconsider its decision.

## II

Rivera seeks a certificate of appealability on two claims: He contends he has made a prima facie case that he is retarded, relying upon Atkins v. Virginia,[1] and that he is innocent of the crime for which he was sentenced to death.

## III

The Texas Court of Criminal appeals concluded that Rivera had failed to set out "sufficient facts to raise a prima facie claim of retardation," that he failed to make "this threshold showing." It then dismissed the subsequent writ application as an abuse of the writ under Article 11.071, Section 5(a). The court observed:

> The evidence he has submitted to this Court includes applicant's grade reports for first through sixth grades. These records indicate that applicant was born on December 23, 1962, and began school in 1969. He earned Cs in all classes and terms except one D in one term. He repeated first grade and was placed in special classes, where he earned Cs, Bs, and one D. He also repeated fifth grade. By the time he finished sixth grade, his grades had fallen to mostly Ds and Fs in his academic subjects, including Spanish, his home language and in which he had previously earned As. He continued to earn

---

[1] 536 U.S. 304 (2002).

2

Cs or less in academic subjects, but earned As and Bs in Mechanical Repairs. At age 17, applicant withdrew from school while in the ninth grade. He earned a GED in 1980. The evidence offered by applicant does not show the required "significantly subaverage general intellectual functioning."

Affidavits from three of applicant's sisters recount that applicant was a slow learner and apparently never learned to read well, tell time, or drive a car. Because he did not read well, applicant had difficulty in filling out job applications; his father found work for him. Applicant also forgot things and was difficult to understand when he spoke. One sister also stated that applicant began to sniff paint when he was young and continued to do so through high school. Other than allegations that he did not work much, there is no evidence of deficits in adaptive behavior.

Although applicant did not submit the results of an IQ test, we have reviewed the record from direct appeal. Included in that record are a pen packet which shows that applicant was tested and scored an IQ of 92. Also in the record from direct appeal is the affidavit of a psychiatrist who testified for the defense during the punishment phase. The affidavit indicates that the expert's evaluation of applicant in anticipation of trial was consistent with an IQ score of 92. The affidavit also opines that the recorded IQ was lowered by long-standing inhalant abuse.

Medical records for applicant indicate a head injury in 1990 and [a] detoxification admission to a mental-health facility in 1985. There is no mention of mental retardation.

A remand of a subsequent application raising an *Atkins* claim is appropriate when an applicant sets out sufficient facts to raise a *bona fide* claim of mental retardation, but in the instant cause applicant has failed to make this threshold showing. Because of applicant's failure to produce "sufficient specific facts" to support an *Atkins* claim, we dismiss applicant's

subsequent writ application as an abuse of the writ under Article 11.071, Section 5(a).[2]

1

The State concedes that under the law of this circuit the *Atkins* claim is properly before us. We recently explained that a prima facie showing within the meaning of 28 U.S.C. § 2244(b)(C)[3] is "'simply a sufficient showing of possible merit to warrant fuller exploration by the district court.... If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition, we shall grant the application.'"[4] As we explained in *In re Morris*, the grant of authority to file a claim of retardation is tentative in the sense that the district court must dismiss the motion without reaching its merit if Rivera fails to meet the requirements for filing.

---

[2] *Ex Parte Rivera*, No. 27,065-02, slip op. at 2-3 (Tex. Crim. App. July 25, 2003).

[3] The Court of Appeals may authorize the filing of a second or successive application only if it determines that the applicant makes a prima facie showing that the application satisfies the requirements of this subsection.

[4] *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70, (7th Cir. 1997)); see *Reyes-Requena v. United States*, 243 F.3d 893, 898-99 (5th Cir. 2001).

4

The Supreme Court in *Atkins* pointed to the American Association on Mental Retardation and American Psychiatric Association's three-prong definition of mental retardation,[5] which instructs that mental retardation is characterized by (1) subaverage general intellectual functioning (*i.e.*, an IQ of approximately 70 to 75 or below), existing concurrently with (2) related limitations in two or more of the following adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work, and (3) onset before the age of eighteen.[6]

2

The State first argues that the *Atkins* claim of retardation is procedurally barred, pointing out that the Texas Court of Criminal Appeals refused to review claims asserted in the writ application; specifically that it relied upon Section 5(a) of Article 11.071 of the Texas Code of Criminal Procedure, forbidding in successive habeas petitions allegations for which the legal and factual basis was previously available.

The State argues with force that Rivera failed to provide the state courts with sufficient facts to raise a *bona fide* claim of mental retardation under *Atkins*. The argument continues that

---

[5] *Atkins*, 536 U.S. at 308 n.3.

[6] *Id.*

Rivera failed to provide the Texas Court of Criminal Appeals with a fair opportunity to apply the controlling federal principles; that of the twenty-three exhibits attached to Rivera's motion, seven, Numbers 14, 16, 17, 18, 19, 20, and 23, were never presented to the Texas court.

Moreover, four exhibits, 1, 2, 3, and 15, were first offered to the Texas Court of Criminal Appeals in Rivera's suggestion for a reconsideration of the dismissal of the successive state writ. The Texas Rules of Appellate Procedure explicitly provide that "a motion for rehearing an order that denies habeas corpus relief under Code of Criminal Procedure articles 11.07 or 11.071, may not be filed."[7] And the State urges that the Texas Court of Criminal Appeals explicitly relied upon this independent state ground in refusing relief.

We agree with the latter contention. It is plain that Rivera's *Atkins* claim gains its strength by the report of Dr. Garnett which was never presented to the state court until the motion for reconsideration of the decision by the Texas Court of Criminal Appeals denying relief. Dr. Garnett's report described the following limitations in Rivera's intellectual functioning:

> Academic records can often be utilized in an effort to aid in the determination of Mental Retardation. Unfortunately, again Mr. Rivera's records are limited and offer only clues and indicators. It is noted in his school records that his grades were poor (C's and D's)

---

[7] Tex. R. App. P. 79.2(d).

throughout his academic experience. According to those records, he repeated several grades (D's and F's). He was placed in Special Education and could not produce successful grades even there. At one point, 1977-78, even in special classes he was failing and records indicate that his grades in Math and Science were changed from failing grades (63 & 65) to passing (70 & 70) on his transcripts so that he could be "promoted" to the next grade. He then failed and produced no credits for the next two years. Mr. Rivera also received failing scores in the ninth grade "CVAE" program. Hugh Albright, a teacher of Mr. Rivera's, reports that the material taught at "CVAE" was at the third to fifth grade level.

It is important to note that Mr. Rivera was in special classes for most of his academic career. However no testing was noted in his records. His placement in special classes seems to be a defacto [sic] determination of Mental Retardation, since it must be assumed that testing of Mr. Rivera was conducted for admission. TEA requires such assessments for admission to special education programs such as he was in. Affidavits were taken from teachers who knew him then, and were supportive of such conclusions (noted later in this statement).

Mr. Rivera's achievement scores also suggest significant limitations in intellectual functioning. At age 11, while in the fifth grade, Mr. Rivera's test scores showed his reading achievement level at less than third grade. Two years later, after repeating the fifth grade, Mr. Rivera was found to "need improvement" and was reading assignments identified by a teacher at his school at only the first or second grade level. Mr. Rivera continued to lack basic academic abilities as reflected in achievement testing conducted by TDCJ Windham School District. In 1992, at age 19, testing revealed that his grade level was:

Math 5.0
Reading 4.1
Language 3.2
Comp. 4.1

Thus, as an adult, Mr. Rivera was performing academically at the level of a 10 year old. Another significant fact is that Mr. Rivera's TDCJ records reflect he began sniffing paint at the age of 14. His childhood use of

inhalants is also confirmed in the affidavit of his sister. The abuse of inhalants has been directly linked to brain damage and could easily have resulted in further impairment in Mr. Rivera's intellectual functioning.

Dr. Garnett cast doubt upon test scores appearing on the record and pointed to evidence of deficits in Rivera's adaptive skills, including his social promotions to the ninth grade where he dropped out of school entirely. He points out that by age 14 Rivera's test scores "clearly demonstrate" that he lacked basic reading skills and "could not master phonetics, vocabulary development, and comprehension." By age fourteen Rivera was unable to make change from a dollar, could not add or subtract well, and could not multiply at all. He was placed in special education classes. Dr. Garnett pointed to other adaptive deficits, including lack of personal hygiene and basic living skills such as the ability to tell time, to obtain a drivers license, or maintain a bank account, none of which he could do. He was unable to obtain any job for himself, and those obtained for him by his father he could not hold.

As Dr. Garnett put it:

What is clear from all of the accounts of teachers and Mr. Rivera's family, is that Mr. Rivera was unable to take care of the day to day tasks such as hygiene, finding and keeping a job, paying bills, or fixing things around the house without help and direction from others. Reports from MHMR and professionals who evaluated Mr. Rivera are also strongly suggestive of Mental Retardation. A diagnosis from MHMR in 1985 by Pedro Ruggero, M.D., a staff psychiatrist at the Tropical Texas MHMR Center[, that] described Mr. Rivera included "Dependent Personality." The symptomatic criteria for

that diagnosis includes many of the characteristics that are common to Mental Retardation and mistakenly aligned with other diagnoses. It appears that this was so in this case. This disorder is characterized by behaviors such as an inability to make everyday decisions without advice or reassurance from others; allows others to make most important decisions; agrees with people even when he or she believes they are wrong; has difficulty initiating projects or doing things on his own; volunteers to do things that are unpleasant or demeaning in order to get other people to like him; and feeling uncomfortable when alone. All of these behaviors are also seen in persons with mental retardation.

Rivera urges in reply to the State's contention that the exhibits to the motion for reconsideration are not to be considered that he did not "fail" to develop the factual record before the State court through any fault of his own. He makes an argument that "he sought funds to retain an expert in a motion filed in conjunction with his successive application for habeas corpus and that the State trial court did not have the authority to decide the request for expert assistance unless the Texas Court of Appeals remanded the application to the trial court"; that the dismissal by the Court of Criminal Appeals was a "de facto" denial of the request before the trial court. This confusing response is clear in one respect. It does not explain the filing of Dr. Garnett's report only in support of its motion for reconsideration. Nor do we have a finding labeled "writ abuse" by the Court of Criminal Appeals that is no more than a ruling that the factual submission of retardation does not meet its requirement of a threshold showing. Rather, we have an independent state ground resting on a

precisely stated State rule of procedure. A recitation in the State court's order that "moreover, upon due consideration, we decline to reconsider the matter on our own initiative" is no ruling on the merits. It was rather a refusal to consider sua sponte.

Examining evidence that was properly presented to the Texas court, we are persuaded that no prima facie case of retardation has been presented and no authorization to pursue this claim in a successive writ ought to be granted.

### IV

Rivera in his second claim asserts his actual innocence, relying upon an October 1999 recantation of co-defendant Zavala. The State responds that Rivera has failed to show that the factual predicate for this claim could not have been discovered through the exercise of diligence, pointing to 28 U.S.C. § 2244(b)(2)(B)(i).

We have consistently declined the view that actual innocence is an independent basis for a constitutional claim.[8] In *Herrera v. Collins*,[9] the Supreme Court explained, "our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the

---

[8] See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

[9] 506 U.S. 390 (1993).

merits, even though his habeas petition would otherwise be regarded as successive or abusive."[10] The State contends that Rivera's claim of innocence at best provides a gateway for the district court to consider claims regarding Zavala's recantation, specifically that the State withheld evidence of Rivera's innocence in not providing defense counsel with a statement, and alternatively, if counsel had the statement, he was ineffective for not using it.

We, as the State, find this contention meritless in that Rivera fails to show that the factual predicate for this claim could not have been discovered through the exercise of diligence. 28 U.S.C. § 2244(b)(2)(B)(i). Rivera's counsel does not recall whether he was furnished any statement of Zavala, an inadequate basis for proceeding on any *Brady* claim and no explanation has been offered for failure to discover any ineffectiveness. We deny authorization to file the claim of actual innocence in this successive petition.

V

The motion for authorization to file a successive petition and the request for stay of execution are DENIED.

---

[10] *Id.* at 416-17.

11