IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA | § § | |
| *Petitioner,* | § § | No. B-03-139 |
| v. | § § | |
| DOUG DRETKE, Director, Texas Department of Criminal Justice, Institutional Division, | § § § § | |
| *Respondent.* | § § | |

### AFFIDAVIT OF RICHARD GARNETT, PH.D.

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

BEFORE ME, the undersigned authority on this date, personally appeared Richard Garnett, Ph.D., who having been duly sworn, deposed and stated as follows:

1. My name is Richard Garnett, Ph.D. I have a doctorate in psychology and I am licensed to practice in the State of Texas.

2. I am of sound mind and am competent in all ways to testify to the matters stated in this affidavit. I have personal knowledge that the statements in this affidavit are true and correct.

3. I have previously given testimony in the above-referenced case on January 7, 2004 and January 14, 2005 regarding my assessment of Mr. Rivera's intellectual and adaptive functioning in reaching the diagnosis that he is mentally retarded.

4. In my opinion the Beta-II and WAIS-R short form tests administered to Mr. Rivera should be excluded from consideration by the Court in assessing Mr. Rivera's intellectual functioning because they are not reliable or accurate assessments of his full scale IQ.

5.  The *WAIS-III Administration and Scoring Manual* ("*Scoring Manual*") explicitly states that short form examinations like the WAIS-R (short form) and the Beta-II are not appropriate for the diagnosis of mental retardation and are not indicated for use in a legal proceeding such as this one: "Short forms should be used only for a quick estimate of intellectual functioning or for screening purposes. They should not be used in isolation for diagnosis or classification. In general, they should not be used in examinations with a legal, judicial, or quasilegal purpose" *Scoring Manual, 36.*

6.  The Beta was not designed to measure intelligence and should not be used to reach a diagnosis of mental retardation: "Beta-II, like its predecessors, is designed to provide a measure of nonverbal ability to adults who are suspected of having literacy problems" *Revised Beta Examination Second Edition (Beta II) Kellogg and Morton, Psychological Corporation, 1974, 4.* The Revised Beta was standardized via sample testing in 1974 and 1976. There is little research on the Beta II and most of the statements that are made about it are based on very old, out of date information.

7.  The Revised Beta is a group administered, paper-and-pencil test originally developed to screen World War II military recruits and later to screen prison inmates. The test takes 10 to 15 minutes to administer. There are many reasons why this test is inappropriate to use in the determination of intellectual ability and should never be used for the diagnosis of mental retardation, particularly in the context of a legal determination that will determine whether Mr. Rivera lives or dies. The biggest shortcoming is that it does not assess general intellectual functioning. This shortcoming contraindicates its use for diagnosing mental retardation both under Texas practice standards and under accepted professional diagnostic procedures. The Texas Administrative Code, American Psychiatric Association and The American Association on Mental Retardation all agree that the intelligence quotient should be obtained by assessment with one or more of the standardized, comprehensive, individually administered intelligence tests. The Beta-II does not, as is necessary for a professional diagnosis, assess the broad area of intelligence required by professional standards. The Standard Error of Measurement is +/-9 points, which is a reflection of the questionable validity of the instrument. It is also pretty well known that for a pack of cigarettes, a prisoner taking the Beta-II can get help with the answers. Because the Beta-II is part of the screening process that determines whether a prisoner is put in the Mentally Retarded Offender Program ("MROP"), prisoners have an incentive to score high on it for fear that they will be labeled a "retard" and have fewer opportunities for jobs and freedom within the prison. Additionally, the state has a disincentive to diagnose an offender with mental retardation because such a diagnosis requires special placement and special care that result in added trouble and cost to the State. For these reasons, the Beta-II is not a reliable indicator of Mr. Rivera's intelligence quotient for purposes of assessing his mental retardation and should be excluded from consideration.

8. The short form of the WAIS that was administered is not a standard professional procedure in arriving at a diagnosis of mental retardation. To give only the Vocabulary and Block Design, one must not only extrapolate a hypothetical "Full Scale IQ," but must functionally define intelligence as word knowledge and arranging symbols. No other person or entity is willing to base a diagnosis on that except the Texas Department of Criminal Justice ("TDCJ"). It is not clear how the TDCJ examiners picked those two subtests, and there are no charts to indicate whether there is any rational method by which the examiners arrive at a "Full Scale" score. If one were allowed to "cherry pick" subtests, then the scores could be manipulated for anyone. In my opinion, definitive statements about the broad intellectual status of an examinee based on a two subtest short form of the Wechsler are not clinically sound.

9. The cause of an individual's intellectual and adaptive functioning deficits is wholly irrelevant in assessing mental retardation. The cause of mental retardation is unknown in the great majority of cases. The Director contends that Mr. Rivera's deficits were caused by "his own volitional conduct (for example, his inhalant abuse and extensive criminal history), or the result of extensive anti-social personality features" and therefore were not evidence of mental retardation. *Resp.'s Ans. to Pet.'s Post-Show Cause Hrg. Brief* at 30. This contention ignores the fact that even if an individual does something to injure himself and that injury results in adaptive and intellectual functioning deficits before age 18, the deficits are still evidence of mental retardation. Even if it is true that Mr. Rivera's inhalant abuse, criminal history, or negative personality characteristics are what ultimately led to his deficits, this does not change the fact that he had those deficits, he had them before he was eighteen, and he is mentally retarded. The cause of the deficits, whether it is volitional or not, does not play any role in the ultimate determination of whether or not Mr. Rivera is retarded. The only issue is whether those deficits were seen in the required areas before age 18. In my opinion, Mr. Rivera has shown ample evidence to demonstrate that he had intellectual and adaptive functioning deficits and that he had them before age of eighteen.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Richard Garnett, Ph.D.

SUBSCRIBED TO AND SWORN TO before me, the undersigned authority on the _18_ th day of June 2005.



MARY ANN MAGILL
My Commission Expires
February 21, 2009

Notary Public in and for the State of Texas

My Commission Expires: _02-21-2009_