IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO RIVERA | § | |
| | § | |
| Petitioner, | § | |
| | § | No. B-03-139 |
| v. | § | |
| | § | |
| DOUG DRETKE, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## AFFIDAVIT OF JEFFREY S. LEVINGER

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF DALLAS | § | |

BEFORE ME, the undersigned authority, on this date personally appeared Jeffrey S. Levinger, who having been duly sworn, deposed and stated as follows:

1. My name is Jeffrey S. Levinger. I am a partner at Carrington, Coleman, Sloman & Blumenthal, LLP in Dallas, Texas. I am licensed to practice law in the State of Texas.

2. I am of sound mind and am competent in all ways to testify to the matters stated in this affidavit. I have personal knowledge that the statements in this affidavit are true and correct.

3. I represented the Petitioner, Alberto Valdez, in connection with habeas corpus petitions filed in both state and federal court, beginning in June 1990. In those habeas proceedings, Mr. Valdez argued, among other issues, that his right to effective assistance of counsel under the Sixth Amendment had been violated and that it was "cruel and unusual punishment," in violation of the Eighth and Fourteenth Amendments, to execute mentally retarded persons like Valdez. On June 11, 2004, after an evidentiary hearing in the 117th Judicial District Court of Nueces County, Texas, the trial court determined that Mr. Valdez is in fact mentally retarded and thus was entitled to habeas relief under *Atkins v. Virginia*, 536 U.S. 304, 153 L.Ed.2d 335 (2002).

4. Before receiving a death sentence, Mr. Valdez was in the Texas Department of Criminal Justice ("TDCJ") several times for unrelated criminal offenses. There was evidence that four so-called IQ tests were administered to Mr. Valdez during these prior incarcerations. Based on what we were able to learn about the

screening process at TDCJ, we believed that the tests the TDCJ administered were Beta II tests. Mr. Valdez scored an 88, 95, 96, and 87 on these tests.

5. In the federal proceeding in the United States District Court for the Southern District of Texas, Judge Janis Jack noted that the Beta II test typically given to inmates entering the TDCJ system was "universally held to be much inferior to the Wechsler exam." *Valdez v. Johnson*, 93 F. Supp. 2d 769, 785 n.35 (S.D. Tex. 1999) Ultimately, Judge Jack discounted the previous tests that the TDCJ administered to Mr. Valdez because we demonstrated that such tests were not reliable. *Id.* Specifically, the Beta II tests were administered in only 15 minutes in a group setting, were used merely as a rough screening tool to determine whether an inmate belonged in the Mentally Retarded Offender Program ("MROP") unit, and were not appropriate for diagnosing mental retardation. Moreover, the TDCJ system generally has a disincentive to put inmates in the MROP unit because doing so requires special placement and additional cost and effort. Although the Fifth Circuit vacated Judge Jack's finding of ineffective assistance of counsel on procedural grounds, the decision was unrelated to Judge Jack's treatment of the TDCJ tests.

6. Judge Jack also held in her 1999 opinion that there were many "red flags" suggesting mental retardation present in Mr. Valdez's case: "Valdez had dropped out of school at an early age . . . .[,] Valdez was placed in special education, he had a history of drug and alcohol abuse from an early age, he was physically abused as a child, and he been evaluated by a psychologist as a youth . . . . [,] Valdez never lived on his own, never was able to hold a steady job, and only performed menial work." *Id.* at 782. Despite the fact that these "red flags" were present, there is no evidence from the documents the TDCJ and the Attorney General's office provided us that the TDCJ ever diagnosed Mr. Valdez as mentally retarded. Moreover, until last month (following the trial court's finding that he is mentally retarded), Mr. Valdez was never placed in the MROP unit of the TDCJ. After the Fifth Circuit vacated Judge Jack's opinion on procedural grounds and remanded Mr. Valdez's case to the district court, Judge Jack subsequently transferred the case back to state court to accord the State of Texas the first opportunity to determine whether Mr. Valdez is mentally retarded and thus immune from execution under *Atkins*.

7. Immediately before the *Atkins* hearing in June 2004, Dr. Gilda Kessner examined Mr. Valdez and administered the WAIS-III test. Mr. Valdez obtained a full scale score of 64, which is consistent with the scores he obtained in a WISC test administered by the Corpus Christi School District when he was 13 and a WAIS test administered by the Big Spring State Hospital when he was 18. At the *Atkins* hearing, the State of Texas did not attempt to admit the Beta II scores as evidence. As previously stated, the trial court found that Mr. Valdez is mentally retarded and thus is not eligible for the death penalty. The Texas Court of Criminal Appeals affirmed that finding, and the U.S. Supreme Court subsequently denied the State's petition for writ of certiorari. As such, Mr. Valdez's death sentence has been commuted to life in prison, and the TDCJ has transferred him from death row to the MROP unit in Rusk, Texas.

8. Mr. Valdez's case is an example where a habeas petitioner was found to be mentally retarded, even though there is no indication from his prison records that he was ever diagnosed as mentally retarded during multiple, previous TDCJ screening tests.

_____
Jeffrey S. Levinger

SUBSCRIBED TO AND SWORN TO before me, the undersigned authority, on the 27th day of June 2005.

(Seal)

Kimberly Culpepper
Notary Public in and for the State of Texas

KIMBERLY CULPEPPER
Notary Public
State of Texas
My Comm. Expires 04-08-09

My Commission Expires: 4/8/09

644739 1

3